THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* MICHAEL R. STARLING, Defendant-Appellee.

Fifth District   No. 77-358

Opinion filed October 11, 1978.

JONES, J., dissenting.

Howard L. Hood, State's Attorney, of Murphysboro (Bruce D. Irish and Keith P. Vanden Dooren, both of Illinois State's Attorneys Association, of counsel), for the People.

Michael J. Rosborough and Rafael Schwimmer, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, Michael Starling, was charged by information with the offense of burglary. Following a hearing, the Circuit Court of Jackson County granted the defendant's motion to suppress his statements and certain other evidence seized pursuant to the statements. The State appeals from the order pursuant to Supreme Court Rule 604(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)).

Early in the morning of March 13, 1977, the Murphysboro Police Department was notified that the Towne Pharmacy in Murphysboro had been broken into. Sergeant Larry Tincher met the owner at the scene where they found a broken window, an opened drug cabinet and two money bags missing. Acting on information furnished by the owner's son, Tincher questioned Dale Lacy about the incident and he admitted his involvement and implicated the defendant. At approximately 5:30 a.m., three policemen arrested the defendant at his home and took him to the police station for questioning. His father arrived at the station a short time later. Approximately one hour later, a police officer accompanied the defendant to his home where he retrieved part of the missing money. Thereafter, the defendant returned to the police station and executed a written confession.

At the suppression hearing the defendant, who is 18 years old, testified that he was awakened by his mother early in the morning of March 13, 1977, and told that the police were coming to their home to talk with him. Shortly thereafter, three policemen arrived, arrested him and took him to the police station. Upon arriving at the police station he was taken to a room where a plainclothes policeman began to question him about the incident. While being questioned by this officer, another policeman came into the room momentarily. The defendant related that as the plainclothes officer was beginning to question him, his father came into the room and told him not to say anything else until they had an attorney. According to the defendant, he responded to his father's advice by nodding his head affirmatively and saying "okay." The plainclothes policeman then asked the defendant's father to leave the room and he eventually did so.

Defendant further testified that after his father left the room the police officer continued to question him, at one point telling him that he did not need to tell the police anything because they had enough on him already. He stated that he could not recall receiving *Miranda* warnings; although, he admitted that he knew he had a right to an attorney and that he was charged with burglary. He related that he had slept only a few hours prior to being awakened by his mother, had been drinking the night before and that he usually had a difficult time awakening when tired. He also could not recall reading the statement of rights printed on the statement form he signed or being told to read it. The written statement he executed was marked 6:38 a.m., March 13, 1977.

Francis Starling, defendant's father, testified that when he arrived at the police station and identified himself he was invited by Sergeant Tincher into the room where his son was. He related that when Tincher began to encourage his son to give a statement he cautioned him not to talk until they consulted an attorney. According to Starling, Tincher was looking directly at the defendant when he nodded his head and said "okay." After Tincher repeated his request, Starling left the room where his son and Tincher remained alone. Starling stated that Tincher never advised his son of his rights in his presence and that no other officer was in the room when Tincher requested him to leave. He further testified that his son was generally difficult and slow to awaken.

Sergeant Larry Tincher and Officer Ronald Manwaring testified at the hearing on behalf of the State. Tincher related that the defendant's father entered his office while Tincher was advising the defendant of his rights. He testified that he asked the defendant's father to leave the room because he was interrupting the interrogation. However, he admitted that the interruption prompting the request had been Mr. Starling's warning to his son to consult an attorney before answering any questions. According to Tincher, the defendant never indicated to him that he wanted an attorney and had acknowledged to him that he understood his rights. After the defendant's father left Tincher's office, the defendant made a statement to Tincher and led the police to his home where part of the missing money was recovered.

Officer Ronald Manwaring testified that he arrested the defendant on the morning in question and transported him to Sergeant Tincher at the police station for questioning. Manwaring stated that during the brief period he was in Tincher's office he heard Tincher advise the defendant of his rights. He further testified that the defendant's father was not in the room at that time.

At the close of all the evidence, the trial court ruled that the statements made by the defendant were not made voluntarily and that the evidence seized pursuant to the statements was also tainted. The court did not

interpret the father's warning as a request for an attorney, and regarded the defendant's response as directed to his father and not to Officer Tincher as an assertion of his rights. The court further found that Tincher had at some point advised the defendant of his rights. In granting the defendant's motion to suppress statements and evidence, the trial court stated in part:

> "If we try to put ourselves in the position of the defendant at that point, an eighteen year old kid, sure he is an adult in the terms of the criminal law, whose father tells him, 'Don't say anything until you have an attorney,' and he may or may not have acknowledged that, but nevertheless, the police then say to the father 'Please leave,' and the father leaves, what is the kid to do? I ask you that. It seems to me at that point this became less than voluntary. The boy's statement became less than voluntary. And everything that flowed from it thereafter must have become the fruit of the poisonous tree and the court therefore is going to grant Paragraph ONE and TWO of the motion, finding that the statement was not voluntarily given * * *."

The issue presented for review is whether the trial court properly suppressed the defendant's confession and evidence subsequently seized. The State contends that the trial court erred in suppressing defendant's statements which were made after his father left the room because the defendant had been advised of his rights before being interrogated and had not requested counsel.

■■■ The question of the voluntariness of a confession is closely related to the issue of the voluntariness of a waiver of constitutional rights. The general rules with regard to voluntariness of confessions were recited by our supreme court in *People v. Prim*, 53 Ill. 2d 62, 70, 289 N.E.2d 601, 606 (1972):

> "Whether a statement is voluntarily given depends upon the totality of the circumstances. The test is whether it has been made freely, voluntarily and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed. [Citation.] In making its decision the trial court need not be convinced beyond a reasonable doubt, and the finding of the trial court that the statement was voluntary will not be disturbed unless it is contrary to the manifest weight of the evidence." (See also *People v. Vinson*, 61 Ill. App. 3d 684.)

In determining the totality of the circumstances, factors to be considered include the relentlessness of interrogation, failure to warn of constitutional rights and defendant's age, experience and education. (*People v. Hester*, 39 Ill. 2d 489, 237 N.E.2d 466 (1968); *People v. Pierre*, 114 Ill. App. 2d 283, 252 N.E.2d 706 (1st Dist. 1969).) Here the trial court determined

that the defendant's confession was involuntary. We do not think, in view of the foregoing authority, that this finding was against the manifest weight of the evidence.

The instant defendant was 18 years old at the time of the alleged incident and had apparently no previous experience with the criminal justice system. He was awakened at an early hour after only a few hours sleep. He was advised by a police officer that he might as well tell everything he knew because the officer knew that he was involved in the incident. A knowing waiver by a defendant of his right to remain silent and consult with an attorney must be sufficiently demonstrated by the State. *People v. Washington*, 68 Ill. 2d 186, 194, 369 N.E.2d 57, 60 (1977); *People v. Brooks*, 51 Ill. 2d 156, 281 N.E.2d 326 (1972).

While the case at bar is somewhat unusual in the sense of the factual situation presented, we nevertheless believe that the trial court could have properly and reasonably concluded from the evidence that the defendant's confession was involuntary, thus tainting the evidence seized subsequently. It is for the trial court to resolve conflicts in the evidence presented. It is in a favored position to observe the demeanor of witnesses, hear their testimony and evaluate the other evidence thereby rendering it best equipped to determine the voluntariness of a confession.

■■ ■ We also note that while the trial court did not interpret the defendant's response to his father's statement in Tincher's office as a request for an attorney, such an interpretation would not have been error. Where the accused indicates in any manner at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning. (*Miranda v. Arizona*, 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 707, 86 S. Ct. 1602 (1966).) It is not clear but that the instant defendant was asserting his right to counsel by nodding his head affirmatively to his father's warning that he consult with an attorney before answering any questions. The Supreme Court recognized in *Miranda* that custodial interrogation, such as the one conducted herein, is inherently coercive. While it is true that an accused has no constitutional right to the presence of a parent during interrogation (*People v. Pierre*, 114 Ill. App. 2d 283, 291, 252 N.E.2d 706, 710 (1st Dist. 1969)), the ejection of his father after the warning about consulting an attorney could well have signaled to the defendant that to have asserted his right to remain silent would have been futile for the officer was determined to obtain a confession.

For the reasons stated, the judgment of the Circuit Court of Jackson County is affirmed.

Affirmed.

G. J. MORAN, J., concurs.

Mr. JUSTICE JONES, dissenting:

There is simply no evidence to support the trial court's finding that defendant's confession was involuntary and the trial court's finding was necessarily against the manifest weight of the evidence. I accordingly respectfully dissent.

The majority properly states that in determining whether a confession is voluntary the totality of the circumstances are to be considered and that some of the factors to be considered include the relentlessness of interrogation, failure to warn of constitutional rights and defendant's age, experience and education. I believe the record affirmatively shows that none of these factors were transgressed and that the totality of the circumstances plainly indicate that the confession was voluntarily given.

The trial court expressly found that the *Miranda* warnings were given, that the father's warning not to talk without an attorney was not a request for an attorney and that the defendant's response to his father's admonition was not an assertion of rights. Those findings were not against the manifest weight of the evidence and in my opinion preclude a finding of involuntariness.

In *People v. Prim* the supreme court held a confession to be voluntary although a request for parental presence was denied, in *People v. Rosochacki*, 41 Ill. 2d 483, 244 N.E.2d 136 (1969), held the same where defendant's request was to see a priest. This case is no different than *Prim* and *Rosochacki* in its facts and those cases require a finding of voluntariness here.

I would reverse the order of suppression entered by the trial court.