THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOSE LOPEZ, Defendant-Appellant.

First District (5th Division) No. 1—89—1141

Opinion filed December 13, 1991.

Michael J. Pelletier and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Monica L. Willis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Jose Lopez (Lopez), defendant, was tried before a jury and found guilty of criminal sexual assault, two counts of aggravated criminal sexual assault and aggravated criminal sexual abuse. Defendant was sentenced to 40 years with the Illinois Department of Corrections. On appeal Lopez argues that the trial court erred in denying his motion to suppress his confession because his request for counsel was not scrupulously honored and that the evidence does not support the imposition of an extended term sentence.

For the following reasons we affirm in part and vacate and remand in part.

At trial, A.A., the complainant, testified he was 12 years old. In 1986 he was nine years old. He testified that on four occasions between November 5, 1986, and January 2, 1987, the defendant committed a number of acts of anal intercourse on him. Although the record and both parties' briefs contain specific details of the assaults on A.A., we find it unnecessary to repeat them in this opinion.

The assault came to light in April of 1987 when a Chicago police officer gave a talk on child molestation to a school class. After the talk, A.A. raised his hand and told the entire class that a man had been molesting him. His teacher advised A.A. to tell his mother. In May of 1987 A.A. was given an assignment to write a letter to "Dear Anita" (a problem-solving column in the Pilsen newspaper). A.A. wrote a letter about being molested. The letter generated a meeting with school personnel and an aunt. After the meeting A.A. told his mother, sisters and brothers what the defendant had done to him. The police then entered the case.

Lopez argues that a motion to suppress his confession should have been allowed because his request for counsel was not honored by the police or prosecutor. Lopez predicates his argument on the United States Supreme Court case of *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880. In *Edwards* the United States Supreme Court held that a defendant's request for counsel must be scrupulously honored and that once the request for counsel is made

questioning must cease and can only be reinitiated when the accused is provided counsel, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Edwards*, 451 U.S. at 484-85, 68 L. Ed. 2d at 386, 101 S. Ct. at 1885.

The testimony at the hearing on the motion to suppress established the following.

Detective Lawrence Soltysiak (Soltysiak) testified on behalf of the State. He testified to the following. On May 8, 1987, he went to defendant's place of employment in the course of an investigation and met with defendant and two of his supervisors. Soltysiak arrested defendant and read him *Miranda* warnings from a preprinted card. Subsequent to defendant being read his rights, the supervisors requested permission to speak to the defendant in private. Soltysiak agreed and left the room. Thereafter Soltysiak reentered the room and one of the supervisors asked him if it would be all right to call an attorney from the Legal Aid Society.

Defendant was transported to the police station where he arrived at approximately 11 a.m. Soltysiak put defendant into an interview room, again informed him of his rights, told him about the charges being brought, and stated that he would be asking questions again later. Soltysiak then showed the defendant the letter written by the victim and asked the defendant if he would like to talk about it. Defendant stated that he would think about it. Soltysiak testified that he did not physically or psychologically coerce defendant, nor did he ever threaten to do any harm to him. Defendant did not ask for a lawyer during his interview with the detective.

Before taking defendant downstairs to place him in the lockup, Soltysiak received word that there was a phone call from one of defendant's supervisors. Jerez told Soltysiak that he had information about a lawyer for defendant. Soltysiak handed defendant the phone. Defendant talked to his supervisor and wrote down the name of an attorney and a telephone number. Defendant showed the paper to Soltysiak, then placed it in his pocket. He was then taken downstairs into the lockup. Soltysiak told the lockup keeper that defendant wanted to make a phone call, then left.

Assistant State's Attorney Robert Bertucci (Bertucci) also testified on behalf of the State. On May 8, 1987, Bertucci was assigned to the State's Attorney's felony review unit. He was called to investigate an aggravated criminal sexual assault at Area 4 Headquarters around 6 p.m. on May 8, 1987. When Bertucci met with defendant, he advised defendant of his constitutional rights. Bertucci stated to defendant that he understood that defendant had the name and number of

an attorney. Defendant said yes and took the piece of paper with an attorney's name and phone number out of his pocket. Bertucci then asked defendant if he wanted to use the telephone to call that attorney. Defendant said yes. Bertucci took defendant out of the interview room and informed Soltysiak that defendant wanted to make a call. A phone call was made and defendant said that he left a message with an answering machine. After the telephone call, Bertucci took the defendant back to the interview room. As they were walking back to the interview room, defendant said, "I need to get this off my chest." He seemed to be crying as he was covering his face with his hands. Then he said, "I did it." Defendant proceeded to make a verbal confession, talking for three to four minutes.

Bertucci took defendant to use the bathroom. While he was in the bathroom, Bertucci was told that the attorney defendant had called, called defendant back. Bertucci advised defendant of the attorney's call when defendant came out of the bathroom. Bertucci told defendant that the attorney would call back, but defendant said that he did not need an attorney.

At 8:35 p.m., the attorney called. He talked to Bertucci and told him that he would not be representing defendant. Bertucci told the attorney where the case would be going to court. At no time did the attorney state that he represented Lopez.

At the suppression hearing Lopez testified on his own behalf. He testified that on May 8, 1987, he was called into his supervisor's office. His two supervisors were present when Soltysiak read him his *Miranda* rights. Soltysiak told Lopez that the victim's mother had made a complaint against him. On direct examination defendant testified that he did not understand everything that was said; he only understood that he needed a lawyer. However, on cross-examination, defendant stated that he does not have any problems with the English language.

Defendant stated that he asked to speak to a lawyer when the detective interviewed him at Area 4 Headquarters. Defendant received a call from one of his supervisors, who gave him the name and phone number of an attorney. Lopez called the attorney from the downstairs lockup, but the line was busy.

Soltysiak brought defendant back upstairs to the interview room. He asked Lopez questions. Lopez said that his only response was, "When will I get a chance to call my attorney?" He said the detective told him he would have to wait.

Bertucci came into the room and identified himself as an attorney working with the police. He advised defendant of the allegations

against him, and began to question defendant. When defendant asked to call the lawyer, Bertucci told him he would have to wait. Bertucci did not allow defendant the opportunity to use the telephone until much later, after defendant had already admitted that he knew the victim's family and their address.

The trial court made a finding of fact that the defendant was advised of his rights as per *Miranda* and that the defendant understood the English language. The trial court also found that defendant understood the advisement and that defendant did not specifically request an attorney. Thus, this is not a sixth amendment right to counsel case.

The trial judge stated:

"I did find Assistant State's Attorney Bertucci's testimony was believable, very believable, and the evidence that the Defendant stated quote, he needed to get this off his chest unquote, taken in any light is an initiation of the interrogation or questioning by the Defendant."

The trial judge stated that he found no place in the testimony where defendant wanted a lawyer, that defendant received an adequate advisement of his rights, that he made a knowing and intelligent waiver of those rights, and that there was no counsel at the scene.

For defendant's confession to be admitted at trial, the State must first prove that the defendant knowingly and intelligently waived his privilege against self incrimination and his right to counsel. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) To establish a valid waiver the State cannot simply rely on proof that *Miranda* warnings were given. In determining whether a defendant knowingly and intelligently waived his *Miranda* rights, a court must consider the totality of the circumstances, including the characteristics of the defendant and the details of interrogation without any one circumstance or factor controlling. (*People v. Reid* (1990), 136 Ill. 2d 27, 55, 554 N.E.2d 174.) A reviewing court's analysis of a ruling on a motion to suppress is limited to determining whether the trial court's finding was against the manifest weight of the evidence. *People v. Reid* (1990), 136 Ill. 2d 27, 56, 554 N.E.2d 174.

■■ Based on this now-settled law, we must affirm the trial court's ruling not to suppress the evidence. The fact that Lopez was given a *Miranda* warning is undisputed; that he understood the warnings is also undisputed. The record reflects Detective Soltysiak read him the *Miranda* warnings from a preprinted card. Defendant said he understood them. After taking him to the police headquarters, Soltysiak reminded Lopez of his rights. Assistant State's Attorney Ber-

tucci arrived at the scene and readvised Lopez of his rights. Bertucci gave Lopez an opportunity to call a lawyer. Lopez initiated a conversation by stating, "I need to get this off my chest." Lopez then said, "I did it." Lopez proceeded to talk for three to four minutes, verbally confessing to the sexual assaults. Lopez's confession was not in response to any questions posed by Bertucci.

A review of the record indicates Lopez's confession was an act of conscience rather than a violation of his constitutional rights. The question of waiver in this case was a question of fact. In such a situation the trial judge must, after considering the factors enumerated above, determine whether the defendant knowingly, intelligently and voluntarily waived the right. Further, *Edwards* holds that once a suspected criminal invokes his right to counsel during custodial interrogation, he cannot be questioned further until counsel has been made available, unless the suspect himself initiates further dialogue. (*Edwards*, 451 U.S. at 484-85, 68 L. Ed. 2d at 386, 101 S. Ct. at 1885.) " 'The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " *People v. Martin* (1984), 102 Ill. 2d 412, 425, 466 N.E.2d 228, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023.

The trial court must initially determine whether a defendant has been properly admonished of his fifth amendment rights and whether he knowingly, intelligently and voluntarily waived these rights. In making its decision, the court does not have to be convinced beyond a reasonable doubt, and its findings will not be disturbed unless they are against the manifest weight of the evidence. (*People v. Martin* (1984), 102 Ill. 2d 412, 426, 466 N.E.2d 228.) Based on this record we must conclude that the trial court's conclusion on the motion to suppress was supported by the manifest weight of the evidence. The record supports the trial court's ruling that Lopez had reinitiated a discussion with the police when he verbally confessed to the charges against him.

Lopez asserts that his conviction for aggravated criminal sexual assault based on bodily harm was improper and should be vacated. The medical evidence presented showed that the victim's sphincter muscle was relaxed, indicative of anal penetration. Lopez argues that relaxation of the sphincter muscle is inherent in an act of anal penetration and should not be considered bodily harm in order to elevate the offense. Moreover, he argues that relaxation of the sphincter mus-

cle is not bodily harm. Lopez maintains that permitting this physical condition to be used as the factor raising the level of the offense would amount to permitting the use of the very act which constitutes criminal sexual assault (anal penetration) to enhance that offense to aggravated criminal sexual assault. In support of this proposition, Lopez cites law to the effect that it is improper to enhance the classification of an offense or the sentence where the factor is inherent in the offense or has already been used to enhance the same offense. *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627.

The State argues that relaxed anal sphincter muscle tone was not an inherent component of defendant's penetration of the victim's anus and that the victim suffered bodily harm, as a result of the defendant's repeated attacks, which manifested in the form of an abnormal anus, or decreased sphincter muscle tone. The State maintains that the defendant did not commit relaxed sphincter muscle tone; he committed penetration.

At trial, the trial judge found Dr. Demetria Soter qualified to testify as a medical expert. Dr. Soter is a pediatrician at Cook County Hospital, her specialty being pediatric critical care. Dr. Soter testified that on May 7, 1987, A.A. was brought into the Cook County Children's Emergency Room by his mother and two police officers. A.A. was given to Dr. Soter as a patient.

Dr. Soter testified that A.A. told her that it hurt when defendant raped him, and that he had done it on four separate occasions. Dr. Soter did a complete physical examination of the child, focusing on the genital area. A.A.'s physical examination was entirely normal, except that upon rectal examination, he had decreased anal sphincter tone. Dr. Soter testified that A.A. did not fight or find the rectal examination as uncomfortable as children usually do. Dr. Soter stated that in most children, the rectal sphincter muscles are very, very tight, but that A.A. allowed them to do the rectal exam and his muscle tone was not tight. It was lax. The doctor testified that in A.A. there was dilation of the rectum, which is suggestive of repeated penetration. There were no bruises and no lacerations. The medical evidence indicated that the victim had no tears, no hematomas, and no superficial abrasions.

 Bodily harm is one of the aggravating circumstances set forth by statute which may be used to elevate the offense of criminal sexual assault, a Class 1 felony (Ill. Rev. Stat. 1987, ch. 38, par. 12—13), to aggravated criminal sexual assault, a Class X felony (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(2)). Lopez was convicted of two counts of aggravated criminal sexual assault; the aggravating factor in one

count was the victim's age (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(2)), the aggravating factor in the second count was bodily harm (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(2)).

Bodily harm is defined by statute as "physical harm, and includes, but is not limited to, sexually transmitted disease, pregnancy and impotence." (Ill. Rev. Stat. 1987, ch. 38, par. 12—12(b).) Bodily harm may be shown by the actual injury, such as bruises, or may be inferred by the trier of fact based upon common knowledge. (*People v. Jenkins* (1989), 190 Ill. App. 3d 115, 138, 545 N.E.2d 986.) In *People v. Haywood* (1987), 118 Ill. 2d 263, 277, 515 N.E.2d 45, 51, the Illinois Supreme Court held that it is proper to give "bodily harm," as defined in section 12—14, the same meaning that the court interpreted bodily harm to mean under the battery statute in *People v. Mays* (1982), 91 Ill. 2d 251, 437 N.E.2d 633. In addressing the question of what constitutes bodily harm, the *Mays* court stated:

> "Although it may be difficult to pinpoint exactly what constitutes bodily harm for the purposes of the statute, some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent is required." (*Mays*, 91 Ill. 2d at 256.)

" 'Aggravation' is a circumstance which increases guilt or enormity or adds to the injurious consequences of the offense, 'but which is above and beyond the essential [elements]' of the offense itself." (*People v. Robinson* (1981), 92 Ill. App. 3d 972, 978, 416 N.E.2d 793, 799, quoting Black's Law Dictionary 60 (5th ed. 1979).) A factor implicit in an offense for which a defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense. (*People v. Ferguson* (1989), 132 Ill. 2d 86, 97, 547 N.E.2d 429.) We find that the aggravated criminal sexual assault conviction based on bodily harm must be vacated. The bodily harm alleged and proved was decreased anal sphincter muscle tone. No other physical evidence was presented. Based on this record, this cannot be used as an aggravating factor raising the level of the offense.

■ Section 5—5—3.2 of the Unified Code of Corrections provides:

> "The court may impose an extended term sentence under Section 5—8—2 upon any offender who was at least 17 years old on the date the crime was committed and who was convicted of aggravated criminal sexual assault where the victim was under 18 years of age at the time of the commission of the offense." Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(c).

At the sentencing hearing the trial judge stated:

"In my opinion the Defendant is eligible for an extended term, not under the provisions for aggravated sexual assault on account of age, because I believe that would be a double enhancement. I do not believe that is permissible at this juncture under the Statute.

However, under the count wherein he was convicted of criminal sexual assault threatening bodily harm, course of conduct here, apparently began when the boy, [A.A.] was nine years of age, *** and continued when he was ten years of age.

So the Defendant is, in fact, in my opinion eligible under the extended-term provisions on that conviction."

The record reveals the trial court based the extended-term sentence on the aggravating factor of bodily harm combined with A.A.'s age. Since we vacate the conviction based on bodily harm, we must also find that the trial court improperly imposed an extended-term sentence. We remand the matter to the trial court for the purpose of a new sentencing hearing on defendant's conviction for aggravated criminal sexual assault based on age.

Accordingly, for the reasons set forth above, we affirm in part and vacate and remand in part.

Judgment affirmed in part and vacated and remanded in part.

LORENZ, P.J., and GORDON, J., concur.