THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN BENOIT, Defendant-Appellant.

First District (5th Division)   No. 1—90—1157

Opinion filed December 18, 1992.

Michael J. Pelletier and Leslie Wallin, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Marie Quinlivan Czech, and Carol L. Gaines, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Following a jury trial, defendant John Benoit was found guilty of arson, aggravated arson, conspiracy to commit arson and conspiracy to commit aggravated arson. He was sentenced to seven years' imprisonment on the aggravated arson charge. Defendant appeals, contending that: (1) the trial court erred in refusing to suppress defendant's statement; (2) the prosecutor improperly referred to defendant's failure to testify; (3) the trial court gave an issues instruction for aggravated arson which misstated the law; and (4) the trial court erred in allowing evidence of other unrelated misconduct by defendant into evidence.

Briefly stated, the incident giving rise to this case occurred on February 17, 1987, when Dorothy Stirgus' home at 7924 South Fairfield Avenue in Chicago, was set aflame by two Molotov cocktails that were thrown through her window. John Benoit, John Waitman, William English and Patrick Doyle were arrested for the crime. This appeal concerns only defendant Benoit.

■ Defendant's first contention is that the trial court erred in denying his motion to suppress. For the following reasons, we disagree. A valid *Miranda* waiver must be voluntary, knowing and intelligent. (*People v. Bernasco* (1990), 138 Ill. 2d 349, 562 N.E.2d 958.) In determining the validity of the *Miranda* waiver, the court must consider the totality of the circumstances, including the characteristics of the defendant and the details of the interrogation. (*People v. Lopez* (1991),

222 Ill. App. 3d 872, 584 N.E.2d 462.) A reviewing court's analysis of a ruling on a motion to suppress is limited to determining whether the trial court's finding was against the manifest weight of the evidence. *Lopez*, 222 Ill. App. 3d 872, 584 N.E.2d 462.

The evidence adduced from the suppression hearing is as follows. Defendant was arrested at St. Lawrence High School. Defendant was advised of his *Miranda* rights while still at the high school and was informed that he was being accused of aggravated arson. Defendant's father testified that as the police and defendant were entering the police car, he told Sergeant Lowe that he did not want his son speaking to anybody until his attorney was present. According to defendant's father, Lowe responded "okay" or "all right." Lowe testified that he could not recall whether this conversation occurred.

The officers and defendant then proceeded to the police station, with the defendant's father following in his own car. While driving to 11th and State Streets, Sergeant Lowe received a radio message from his commander to call his office. Lowe flagged defendant's father and told him to follow him to 79th and Western Avenue, where he was going to stop and make a phone call. Defendant's father then indicated that he was concerned about his wife and wanted to go home and check on her. Sergeant Lowe testified that he left the car in order to make the phone call but that O'Meara and Gardner remained in the car with defendant. Defendant, however testified that the officers left him alone in the police car.

At 79th and California Avenue, the officers slowed down and pulled over. According to defendant, Officer O'Meara asked, "Does this area look familiar?" Defendant testified that he did not respond. He testified that he now knew the area to be the firebombing area. The officers, however, denied asking defendant whether the area looked familiar.

Defendant testified that as they were driving to the station, O'Meara said, "You're looking at 60 years. All your friends told on you ***. If you talk now we can get you probation." Defendant testified that he gave up hope and answered the officer's questions. Sergeant Lowe, on the other hand, testified that it was defendant who began talking about the case, asking who had been arrested, and how they found out about his involvement, at which time O'Meara told defendant not to mention anything until they arrived at the station. Detectives O'Meara and Gardner testified that they did not threaten defendant, try to coerce a statement, or make any promises to him. Detective Gardner admitted that he asked defendant why he was involved in this investigation and defendant did not answer him.

Defendant testified that O'Meara said, "We have your friends," and showed defendant a piece of paper with the names William English, Patrick Doyle, and John Waitman written on it. According to defendant, O'Meara asked, "What do you got to say?" and defendant responded, "I ain't saying nothing until I get a lawyer." The officers, however, testified (when the proofs were reopened nine months after the suppression hearing) that defendant did not make a request for an attorney.

At the station, Assistant State's Attorney Warnick gave defendant his *Miranda* rights. Defendant indicated that he understood his rights and signed a written waiver. Defendant then gave a handwritten statement in which he implicated himself in the firebombing. Defendant reviewed the statement, initialled any corrections, and signed it.

Defendant contends that his *Miranda* waiver was unknowing, unintelligent and involuntary because the police falsely assured defendant's father, within defendant's hearing, that they would not interrogate defendant until he had an attorney but then proceeded to question him and coerce him into making a statement. Defendant also points out that he was 18 years old at the time of his arrest and he was a novice in the criminal justice system.

Defendant relies on *People v. Starling* (1978), 64 Ill. App. 3d 671, 381 N.E.2d 817, wherein the appellate court, affirming the trial court, found that defendant's statement was not voluntarily given based on the fact that defendant was 18 years old, he was awakened at an early hour after only a few hours of sleep, had no prior experience with the criminal justice system, and defendant was told that the police already knew of his involvement in the crime.

The situation here is different. The trial court was faced with conflicting testimony, and after observing the demeanor of the witnesses, found the officers more credible. The resolution of conflicting testimony at a suppression hearing is the responsibility of the trial judge. (*People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869.) Where the evidence is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of fact. (*People v. Spivey* (1991), 209 Ill. App. 3d 584, 568 N.E.2d 327.) We find no reason to disturb the trial court's determination. Despite defendant's inexperience with the criminal justice system, defendant was an adult and fully capable of understanding his rights and the effect of waiving them. Based on the facts presented here, we cannot say that the trial court's decision was against the manifest weight of the evidence.

■ Nor do we find that defendant invoked his right to counsel. When the right to counsel is invoked, all interrogation must cease, and it may not resume outside counsel's presence unless the defendant initiates further communication with the police. (*Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880.) Here, it was not until nine months after the suppression hearing, when the proofs were reopened, that the officers testified that defendant did not invoke his right to counsel while he was being transported to the police station. However, permitting the State to reopen its case to present additional proof rests in the sound discretion of the trial court and will not be interfered with on review except in cases of clear abuse of discretion. (*People v. Cross* (1968), 40 Ill. 2d 85, 237 N.E.2d 437.) We find no abuse of discretion in the trial court's decision allowing the State to reopen its case nor do we find the trial court's finding that defendant did not invoke his right to counsel to be against the manifest weight of the evidence.

■ Defendant next maintains that even if defendant did not invoke his right to counsel, defendant's father invoked the right to counsel for the defendant. We are not persuaded by defendant's argument. Even if defendant's father did tell the officers not to question defendant until he obtained counsel, defendant was an adult and it was defendant's obligation to exercise his right to counsel. (*People v. Watson* (1991), 223 Ill. App. 3d 143, 583 N.E.2d 1180.) Although defendant relies on *People v. Spivey* (1991), 209 Ill. App. 3d 584, 586 N.E.2d 327, and *People v. Starling* (1978), 64 Ill. App. 3d 671, 381 N.E.2d 817, these cases are distinguishable. In *Spivey*, the court found that not only defendant's mother, but also defendant, stated that defendant did not want to answer any questions until he retained an attorney. The court found that because defendant had nodded affirmatively, to his father's warning that he consult with an attorney before answering any questions, defendant's response to his father's statement could be interpreted as a request for counsel.

■ The next contention raised by defendant is that the prosecutor made comments which improperly drew attention to defendant's failure to testify. A defendant has a constitutional right not to testify on his own behalf and it is improper for the prosecutor to refer directly or indirectly on defendant's failure to testify. (*People v. Arman* (1989), 131 Ill. 2d 115, 545 N.E.2d 658.) The appropriate test for determining whether a defendant's right to remain silent has been violated is whether the reference was intended or calculated to direct the attention of the jury to defendant's failure to testify. *People v. Franklin* (1990), 135 Ill. 2d 78, 552 N.E.2d 743.

The first comment defendant takes issue with is as follows:

"Did you hear any testimony from this chair about anything that happened in any police car with him in it? Did you hear that? Did you hear any testimony from that witness stand about that statement [the defendant's statement to the police] not being true? Did anybody get up and say, the statement is a lie, the statement was beaten from this guy?"

While this comment was indeed improper, defense counsel objected to the comment and the objection was sustained. Defendant also complains of the prosecutor's statement that the jury heard no testimony regarding the time the assistant State's Attorney interrogated defendant and the comment that the uncontradicted testimony was that defendant was not forced to sign anything. While these comments were of questionable propriety, they are of a more general nature than the first comment. Furthermore, any error was harmless beyond a reasonable doubt. Evidence of defendant's guilt was overwhelming, particularly in light of defendant's confession. See *People v. Howard* (1991), 147 Ill. 2d 103, 588 N.E.2d 1044.

■ Defendant next maintains that the issues instruction for aggravated arson misstated the law. The instruction given to the jury, which was virtually identical to Illinois Pattern Jury Instructions, Criminal, No. 15.04 (3d ed. 1992), states:

"To sustain the charge of aggravated arson, the State must prove the following propositions: First: That defendant *** in the course of committing an arson, knowingly damages, partially or totally, any building; and Second: That when the defendant *** did so he knew or should have known that one or more persons were present therein ***."

Defendant points out that according to the aggravated arson statute, a person commits aggravated arson when he "knows or *reasonably* should know that one or more persons are present therein." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 38, par. 20—1.1) Although we agree with defendant that the word "reasonably" should have been included in the jury instruction, the absence of this word certainly does not require reversal in this case. An error in instructions will be considered harmless if it is demonstrated that the result would not have been different if the proper instruction had been given. (*People v. Fierer* (1988), 124 Ill. 2d 176, 529 N.E.2d 972.) The instruction as tendered actually imposed a higher standard on the State to prove the defendant's knowledge that one or more persons were present in the building he damaged. In light of the fact that the jury found that defendant "should have known" that the premises were occupied,

then it logically follows this same evidence would establish that defendant "reasonably should have known" the premises were occupied.

■ The final contention raised by defendant is that the trial court erred in denying his motion *in limine* to exclude portions of his statement which amounted to evidence of other, unrelated misconduct. In the statement, defendant related that he went with Waitman and Doyle to Jill Jacque's house. They were told by Jacque's brother that she had gone to Taco Bell. Soon thereafter, defendant, Waitman, Doyle and English saw Jacque crossing the street near the Taco Bell. Jacque was crying and asked defendants for a ride. According to defendant's statement, the defendants "joked with her and said [they would] leave her in a black neighborhood." Jacque was crying and she went knocking on the door of a house. Defendant then got Jacque back in the car and took her home. Defendant's statement then set forth defendant's participation in the offense from purchasing gasoline, to returning to John Waitman's home, where he filled a pop bottle with gasoline and later threw a brick through the victim's window.

What defendant contends is that the portion of the statement referring to Jill Jacque, particularly the part about dropping her off in a black neighborhood, was irrelevant and prejudicial. We agree with the trial court's decision not to redact that part of defendant's statement referring to leaving Jacque in a black neighborhood. This statement was clearly relevant to show defendant's motive for attacking the victim's home. See *People v. Williams* (1985), 131 Ill. App. 3d 597, 610, 475 N.E.2d 1082 ("The racist references establish a possible motive for defendant's commission of the crime and will not be rendered inadmissible simply because they are prejudicial").

Accordingly, for the reasons set forth above, defendant's conviction is affirmed.

Affirmed.

LORENZ* and MURRAY, JJ., concur.

---

*Justice Lorenz concurred in this opinion prior to his retirement.