THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KENNY HENDERSON, Defendant-Appellee.

First District (2nd Division)   No. 1—92—4111

Opinion filed September 30, 1994.

McCORMICK, J., dissenting.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Donald T. Lyman, and Robin M. Mitchell, Assistant State's Attorneys, of counsel), for the People.

No brief filed for appellee.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

Defendant Kenny Henderson was charged with armed robbery, attempted armed robbery, two counts of aggravated unlawful restraint, and unlawful use of a firearm by a felon. After the circuit court granted defendant's motion to quash his arrest and suppress the evidence obtained thereafter, the State appealed pursuant to Supreme Court Rule 604(a)(1). (134 Ill. 2d R. 604(a)(1).) The State contends that the circuit court improperly quashed defendant's arrest and suppressed the evidence because the officer had sufficient probable cause to arrest defendant. We agree.

Although defendant has not filed an appellee's brief, we may decide the merits of the appeal since the record is simple and the State's claim can be easily adjudicated without the aid of an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493.

Defendant testified at the hearing on his motion to quash his arrest that on June 18, 1991, between 8:30 and 9 a.m., he was parking his 1976 Buick Regal at 5600 West Chicago Avenue when police arrived. An officer said defendant's vehicle had been used in an armed robbery, pointed his gun at defendant, and told him to step out of the car. As he stepped out of the car, defendant explained to the officer that the car had been stolen, that he had just gotten it started that morning, and that it was not yet registered. The car's steering column had been "peeled" and its trunk lock had been "punched." The officer handcuffed defendant and put him in the police car. Thereafter, he and his passenger, Byron Johnson, were taken to the police station and charged with armed robbery.

Chicago police officer Callaghan testified that on June 17, 1991, at approximately 1:50 p.m., he received a radio message while he was on patrol. The message originated from another district where officers in the area of Kostner and Grand Avenues were looking for a gold 1977 Oldsmobile Cutlass or Buick Regal with license plate JL 2502. The vehicle reportedly contained three black men in their twenties. At that time, he made an unsuccessful effort to find the vehicle. At about 8:35 a.m. the next day, as he was coming out of the police station after roll call, he saw a 1977 Oldsmobile Cutlass or Buick Regal with the plate JU 2502 which was occupied by two black men. He followed the car, and when he pulled it over, the passenger attempted to get out. Although Callaghan thought he was going to run, the passenger, who was in his twenties, complied with his request to get back into the vehicle. Callaghan noticed that the trunk lid had been "punched." When he approached defendant, he noticed that the steering column was "peeled" and wires were hanging out of

the dashboard. He had defendant exit the vehicle and asked him who owned it. Defendant said it was his. Callaghan checked with the communications operations section over his radio and found the vehicle was not registered to defendant.

During cross-examination, Callaghan could not recall defendant saying the key to the vehicle was in the ignition, or recall seeing the key in the ignition, but the police could not get the car restarted and had it towed. Defendant was not violating any laws, but the car was the proper color and apparently the proper make and model of the car being sought in the armed robbery; the license plate number was five-sixths identical to the license plate number given in the radio call the previous day; and the trunk lid was "punched," the column was "peeled," and the dash had wires hanging out of it, giving rise to the probability that the car had been stolen. Defendant was placed under arrest for the investigations of both the armed robbery and the stolen vehicle. Callaghan did not, however, have any information about a vehicle matching that description being stolen at that time, and he admitted that seeing a car with a deck lid "punched" would not necessarily mean that the car had been stolen.

The State argues that the vehicle the police stopped met the description of the vehicle used in the armed robbery and that the officer had probable cause to investigate the matter. When he then assumed that the passenger was going to run, that the trunk lock was "punched," that the steering column was "peeled," that the two men met the general description of the robbers, and he found that defendant was not the registered owner of the vehicle, the officer had probable cause for arresting defendant on charges of armed robbery and possession of a stolen motor vehicle.

Probable cause for arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution to believe that an offense has been committed, and that the person arrested has committed the offense. (*People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356.) Such a determination should be based on the factual and practical considerations of everyday life upon which reasonable and prudent people, not legal technicians, act. (*People v. Moody* (1983), 94 Ill. 2d 1, 445 N.E.2d 275.) It is not necessary that such information be admissible at trial, nor must the information be sufficient to prove the suspect guilty beyond a reasonable doubt. (*People v. Pierson* (1988), 166 Ill. App. 3d 558, 562, 519 N.E.2d 1185, *appeal denied* (1988), 121 Ill. 2d 581, 526 N.E.2d 837, *cert. denied* (1988), 488 U.S. 925, 102 L. Ed. 2d 326, 109 S. Ct. 307.) A reviewing court will not disturb a circuit court's ruling on a motion to suppress unless it is manifestly erroneous. *People v. Adams* (1989), 131 Ill. 2d 387, 400, 546 N.E.2d 561.

The determination of probable cause must center on the information available to the officer preceding the arrest, and the relevant question is whether a reasonable person in that officer's position would believe that a crime was being or had been committed. (*People v. Adams*, 131 Ill. 2d at 398.) The circuit court found that there was insufficient information to establish probable cause to arrest defendant in connection with the radio message the officer had received the previous day, because the vehicle mentioned in the radio message and the vehicle defendant was driving, including the license plate numbers, did not correspond, and because the description of the three individuals as "black males in their twenties" was vague and general. Also, when Callaghan saw the vehicle, it was not near the location of the robbery, and a substantial period of time had passed since the officer first heard the flash message.

■ A police officer may stop and temporarily detain an individual for the purpose of a limited investigation absent probable cause to arrest if the officer is able to point to specific and articulable facts which, taken together with reasonable inferences drawn from the officer's experience, would reasonably warrant the investigative intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Martinez* (1984), 129 Ill. App. 3d 145, 472 N.E.2d 464.) In determining whether a stop is reasonable, an objective standard is used: whether the facts available to the police officer warrant a person of reasonable caution to believe that the action taken was appropriate. *People v. Galvin* (1989), 127 Ill. 2d 153, 167, 535 N.E.2d 837.

■ An officer may make an investigatory stop of a vehicle if he or she reasonably infers from the circumstances that an offense has been committed or is about to be committed. (*People v. Walter* (1985), 133 Ill. App. 3d 550, 479 N.E.2d 12.) For example, in *People v. Rowe* (1983), 115 Ill. App. 3d 322, 450 N.E.2d 804, the court held that where, from a police report, the officer knew that a yellow car with the license plate of the vehicle in question was involved in a pattern of robberies, such information was sufficient to warrant the initial stop.

■ In this case, Callaghan was clearly justified in making an investigatory stop of defendant's car, and the information developed after the stop gave him probable cause to arrest defendant. The previous day, Callaghan had received a flash message that three black men in their twenties were wanted for armed robbery. The men were driving a gold 1977 Oldsmobile Cutlass or Buick Regal, with license plate number JL 2502. Because he was in a neighboring police district, Callaghan unsuccessfully looked for that car. On the day of the arrest, he was pulling out of the police station when he

saw a gold car that appeared to be a 1977 Oldsmobile Cutlass or Buick Regal, with two young black males inside, and with the license plate number JU 2502. The only reason for Callaghan to think these might not be the suspects in the armed robbery was the fact that one digit out of six in the reported license plate number was not an exact match. All of the additional information available to him told him that this could be the vehicle, and these could be the suspects. His investigatory stop of the vehicle was completely justified.

When the vehicle was stopped, the passenger, a black male who appeared to be in his twenties, got out of the car and appeared to be about to run away. Callaghan told the passenger to get back into the car and then approached the vehicle. He saw that the trunk lid was punched; that the steering column was peeled; and that the dash had wires hanging out of it. These are all signs that a car may have been stolen, and Callaghan had been trained to observe such signs. When defendant stated that he was the owner of the vehicle, Callaghan checked the registration and discovered that defendant was not the registered owner. Based upon all of this information, it was entirely reasonable for Callaghan to believe that defendant had committed the offense of possession of a stolen motor vehicle.

The standard for assessing probable cause is the "*probability* of criminal activity, and not proof beyond a reasonable doubt." (Emphasis added.) (*Pierson*, 166 Ill. App. 3d at 562.) The totality of the facts and circumstances within Callaghan's knowledge was sufficient to warrant a person of reasonable caution in the belief that an offense had been committed and that defendant had committed it. (*People v. Rimmer* (1985), 132 Ill. App. 3d 107, 113, 476 N.E.2d 1278.) There was probable cause to arrest defendant.

The circuit court based its ruling in part on the application of *People v. Garmon* (1990), 196 Ill. App. 3d 549, 554 N.E.2d 378, to the facts of this case. The facts of *Garmon*, however, distinguish it sufficiently from this case to invalidate the application. In *Garmon*, a police officer responded to a call at Northwestern Memorial Hospital. When the officer arrived, the defendant was in a hospital security room with several security guards. The officer was told that the defendant approached an individual on hospital property and offered to sell him camera equipment for $100. The officer estimated the value of the equipment, which was not packaged but appeared to be new, at $1,500. The defendant told the officer that he had bought the equipment from another person for $50 two weeks earlier, but that he did not have a receipt. He was trying to sell it to support his drug habit. When the officer called the police station with the serial numbers from the equipment, he discovered it was not reported as stolen.

The *Garmon* court indicated that although the defendant was trying to sell the equipment for much less that its value in order to support his drug habit, there was nothing to indicate that the equipment was stolen or that the defendant stole it. Although there may have been a suspicion that the equipment was stolen, probable cause is more than mere suspicion, and in that case probable cause did not exist to arrest the defendant for the offenses of theft or burglary. Consequently, the court quashed the defendant's arrest.

In this case, the car at issue had clear indicia of having been stolen. The trunk lid was punched; the steering column was peeled; the dash had wires hanging from it. Defendant even stated that the car had been stolen.[1] Although he also stated that he owned the car, further investigation revealed that the car was not registered to him.

Further, Callaghan had been told to be on the look-out for a gold car; defendant's car was gold. The car to look for was a 1977 Oldsmobile Cutlass or Buick Regal; defendant's car was a 1976 Buick Regal. Finally, the reported license plate was JL 2052; the license plate on defendant's car matched five of six digits, and it is easy enough to confuse a "U" and an "L" in a quick reading of a license plate. Therefore, despite the circuit court's holding to the contrary, there was also probable cause to believe that this was the vehicle and these were the individuals wanted in an armed robbery the day before.

Even the circuit court appeared to recognize the probability of criminal activity on defendant's part. At the hearing, the court stated, "as I understand it, \*\*\* even though the Officer did make observations which normally would \*\*\* lead certainly any good officer to believe the car was stolen, \*\*\* apparently there was no way that he was able to confirm that the car was stolen though it was not registered to this individual."[2] As stated above, the standard for assessing probable cause is the "probability of criminal activity, and

---

[1]Although the dissent states that "[d]efendant also testified that he informed Officer Callaghan that *his* car had been stolen" (emphasis added) (266 Ill. App. 3d at 889), the record establishes that defendant never testified that *his* car had been stolen. On the contrary, on direct, cross, and redirect, defendant testified that he told the officers that *the* car had been stolen (*e.g*, "All I said was the car was stolen"). Thus, defendant's own testimony as to what he told the police was ambiguous. Nevertheless, even if defendant had told police that the reason the car appeared as it did was that it had been stolen by another, under the circumstances present here no reasonable police officer was required to accept that explanation.

[2]Although the dissent is premised upon the need for deference to the circuit court's ruling (a principle with which we wholeheartedly concur), no deference is due in this case, for our holding is that the circuit court erred in

not proof beyond a reasonable doubt." (*Pierson*, 166 Ill. App. 3d at 562.) Reviewing courts have repeatedly stated that the search for probable cause is not governed by technical legal rules, but rather by commonsense determinations that are factual and practical. (*People v. Tisler* (1984), 103 Ill. 2d 226, 236, 469 N.E.2d 147.) The circuit court, in effect, held Callaghan to a standard of proof higher than "probability of criminal activity" by requiring verification that the car was stolen to establish probable cause to arrest.

Consequently, we find that the circuit court's order quashing defendant's arrest and suppressing the evidence obtained as a result of the arrest was manifestly erroneous. We therefore reverse the order and remand this cause for trial.

Reversed and remanded.

HARTMAN, J., concurs.

JUSTICE McCORMICK, dissenting:

The circumstances under which a reviewing court will overturn a trial court's ruling on a motion to quash the arrest and suppress evidence are limited to where the trial court's ruling is "manifestly erroneous." (*People v. Adams* (1989), 131 Ill. 2d 387, 400, 546 N.E.2d 561.) "Manifestly erroneous" or "against the manifest weight of the evidence" occurs where the trial court's ruling is " 'palpably erroneous and wholly unwarranted' or 'arbitrary, unreasonable, and not based upon the evidence.' " (*People v. Leach* (1993), 245 Ill. App. 3d 644, 655, 612 N.E.2d 825, quoting *People v. Shelby* (1991), 221 Ill. App. 3d 1028, 1039, 582 N.E.2d 1281, *appeal denied* (1992), 143 Ill. 2d 646, 587 N.E.2d 1023.) This standard of review acknowledges the level of deference we must accord the trial court's rulings on a motion to quash the arrest and suppress evidence. The majority fails to accord that deference to the trial court's ruling that has historically been a fundamental tenet of due process.

Because of the trial court's ruling in favor of a defendant, we must consider as true testimony which favors the defendant's position, unless that testimony is clearly unreasonable. (*People v. Graham* (1991), 214 Ill. App. 3d 798, 805-06, 573 N.E.2d 1346, *appeal denied* (1991), 141 Ill. 2d 550, 580 N.E.2d 124, citing *People v. Holloman*

---

its application of law. Whether or not the police officer had his gun drawn (the only disputed fact that the dissent cites) is of no significance in this case. That fact was never referred to by the circuit court, and it has no legal relevance to the analysis in this case.

(1970), 46 Ill. 2d 311, 317, 263 N.E.2d 7, 11.) The trial court in this case heard contradictory testimony. Defendant testified that Officer Callaghan approached him with his gun drawn. Officer Callaghan, on the other hand, stated that he never drew his gun. The trial court viewed this statement in light of the fact that the officer stopped defendant's car on a suspicion that it was used in an armed robbery, that he called for back up and that he told defendant and his companion to remain in the car "with their hands up."

Indeed a police officer may, under certain circumstances, conduct an investigative stop with an unholstered gun in hand. Common sense will often dictate this caution. However, the denial of this fact under oath could adversely impact upon the officer's credibility. The impact upon the officer's credibility could have been slight and of no consequence. On the other hand, the impact upon the officer's credibility could have been devastating. We cannot explore the inner recesses of the trial court's mind and objectively determine the credibility accorded the police officer's testimony. Because of this limitation, a reviewing court relying upon a written transcript cannot assess the credibility of witnesses. We must give deference to the trial court's findings because of this inherent difficulty.

Defendant also testified that he informed Officer Callaghan that his car had been stolen, that he had just gotten it started, and that he had not yet registered the car. Defendant's statement that the vehicle was stolen was not an admission, as the majority suggests, that he stole the vehicle. It is merely an indication that defendant's vehicle had been stolen. Officer Callaghan "couldn't recall" whether defendant actually said this. He had no information that the car defendant was driving was stolen. His vehicle check revealed only that the car was not registered to defendant and at that time there was no report of the car as stolen.

Officer Callaghan also testified that the vehicle had wires hanging from the dashboard and that the lid of the trunk had been "punched." On re-cross-examination, however, he testified that a car with such indications "does not necessarily" mean that the car is, in fact, stolen. In view of Officer Callaghan's admission that the appearance of the vehicle did not necessarily mean that the vehicle was stolen, the testimony which favors defendant's position was not clearly unreasonable. Notwithstanding that Officer Callaghan had a sufficient basis for an investigatory stop under *Terry v. Ohio*, he did not possess sufficient facts for probable cause to arrest defendant for possession of a stolen motor vehicle.

Where the evidence is contradictory, a reviewing court will not substitute its judgment for that of the trial court. (*People v. Benoit*

(1992), 240 Ill. App. 3d 185, 188, 608 N.E.2d 250; *Graham*, 214 Ill. App. 3d at 805.) The trial court did not make express findings of fact. The trial court ruled that the evidence did not establish probable cause to arrest defendant for possession of a stolen automobile. The majority's opinion reassesses the contradictory evidence and arrives at a contrary conclusion. The trial court's ruling was not arbitrary or palpably erroneous. In fact the trial court's ruling was reasonable and supported by the evidence. The majority advances no reason why it abandons its heretofore enlightened opinion in which it stated, "[i]t is the function of the circuit court in a hearing on a motion to suppress to determine the credibility of the witnesses and to resolve any conflict in their testimony [citation], and a reviewing court may not substitute its judgment as to the weight of disputed evidence or the credibility of the witnesses. [Citation.]" (*People v. Walker* (1993), 253 Ill. App. 3d 93, 103-04, 624 N.E.2d 1353.) We should take care not to abandon such a treasured principle. We should affirm the trial court's rulings.