THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARTHUR BROWN *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 1—90—1612, 1—91—1524 cons.

Opinion filed September 10, 1993.

Rita A. Fry, Public Defender, of Chicago, for appellant Arthur Brown.

Jason W. Bruce, of Chicago, for appellant Michael Harper.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Christopher Daddino, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Following a jury trial, defendants Arthur Brown and Michael Harper were each found guilty of two counts of first degree murder and one count of arson. Each defendant was sentenced to natural life imprisonment with Brown's sentence to run concurrently with a seven-year term for arson and Harper's sentence to run concurrently with a 30-year term for arson. Both defendants appeal.

The issues raised by Brown on appeal are: (1) whether the trial court erred in failing to grant his motion for acquittal; and (2) whether the trial court erred in refusing to tender an instruction defining involuntary manslaughter. Defendant Harper raises the issues of: (1) whether the State improperly introduced testimony from the victim's wife into evidence; (2) whether the court erred in allowing the State to introduce photographs of the victims into evidence; (3) whether the State established a sufficient chain of custody for the gas can; (4) whether the prosecutor made improper comments in closing argument; (5) whether defendant Harper was prejudiced by being tried simultaneously with defendant Brown; (6) whether there was sufficient independent evidence to corroborate defendant Harper's confession; and (7) whether defendant Harper's statement was voluntarily given. For the reasons that follow, we affirm defendant Brown's conviction and we reverse defendant Harper's conviction and remand his case for a new trial.

The relevant facts are as follows. The defendants were tried at the same time but by different juries. Sid Malone testified to both juries that he was at 63rd and Vernon at approximately 5 a.m. on May 28, 1988, when he saw a van, with the license plate number GAS 403, park in front of the video shop and a Chinese restaurant. Two people then went across the front of the van and toward the video shop. Malone saw that one of the men carried a gas can. A few minutes later, Malone saw smoke coming from the video store. Malone was unable to identify in court the men he saw in front of the video store.

Chicago police officers David Brown and Hester Scott testified that they were on duty headed west on 63rd Street in the early morning hours of May 28, 1988, when they saw smoke coming from Magic Video Store. The officers called the fire department and checked to see if anybody was in the store. At this time, defendant Harper approached the officers and asked them if the Chinese or oriental people got out. Sid Malone then approached Officer Scott and told her that he saw two people exit a van with Gas 403 on the license plates and that one of the men carried a gas can. Defendant Harper identified himself as the owner of the video store and volunteered to accompany the officers to Area One to assist in the investigation.

When fireman Kevin Brannigan arrived at the store, there was an explosion that knocked him back five feet. After the fire was put out, Brannigan entered the Chinese restaurant located next door and found two dead bodies, their mouths covered with soot, which indicated that they had died of smoke inhalation. The fire originated in the video store and the smell of gasoline was in the air of the video store.

Detective Joseph Campbell, an expert in the field of fire origin, determined that the point of origin was the video store and that an accelerant had been used. Campbell left the scene and when he returned he found a two-gallon gasoline can at the corner of the building by an alley. It was Detective Campbell's opinion that the fire had been intentionally set in the rear of the video store with gasoline. Detective Campbell testified that he executed a search warrant on the van with license plates GAS 403 and recovered video tapes in the trunk.

Marshall Levin, the landlord of 420 East 63rd Street, testified that he leased the property to defendant Harper. Levin had no knowledge that defendant Harper had any insurance on the store other than the iiability insurance that Levin carried. Levin stated that the video store was more or less current on the rent.

Dr. Yuksel Konakci, a forensic pathologist, testified that the victims died from smoke inhalation and that there were soot deposits on the victims' nostrils and brains.

Alan Osaba, an expert in chemistry, concluded that an accelerant was used. The parties stipulated that William Tyrell, an expert in forensic chemistry, would testify that gasoline was used to start the fire and that the liquid removed from the gasoline can recovered from the scene was in fact gasoline.

Cecil Marvin Hingston testified that he worked at a gas station on Marquette Road on May 28, 1988, and that two men in a white Ford truck purchased gas in a gas can from him at around 5 a.m.

Assistant State's Attorney Joel Whitehouse testified before the Harper jury as to Harper's confession and to the Brown jury as to Brown's confession. Whitehouse read to the Brown jury Brown's statement that he had received a call from Michael Harper in the early morning of May 28, 1988, asking Brown to meet Harper at the video store. Harper informed Brown that he was going to burn down the video store because he could not pay his bills. Harper asked Brown to make the store look as if it had been broken into. While attempting to bend the burglar bars, Harper cautioned defendant about making noise so as not to wake the "chinaman" next door. Brown and Harper then soaked mattresses in gasoline, placed them on the video tapes and set them on fire.

Whitehouse read to the Harper jury Harper's statement that he drove to the video store at 3 a.m. on May 28, 1988, and told Brown that he would like to burn the tapes because he was not making any money and wanted to collect the insurance. Brown agreed to assist Harper in exchange for some X-rated videos. Harper put some videos in his trunk and then sent Jerome Ford to get gasoline. Brown then bent the burglar bars. The mattresses were placed up against the tapes and the fire was started with gasoline. Defendant Harper knew that the owner of the oriental restaurant next door spent the night in the restaurant at times and that he was in the restaurant on May 28, 1988.

Defendant Brown testified on his own behalf before the Brown jury that he did odd jobs and maintenance work for the stores along 63rd Street and had installed a new front and back door with burglar bars to the video store. On May 28, 1988, at about 3 a.m. Harper called and informed Brown that somebody had tried to burglarize the video store and Harper needed Brown to fix the door. Brown went to the shop and saw that the lock had been broken. Brown secured the door with planks, informed Harper that he would come back the next

day to fix the lock, and left. Brown was arrested later that day. Brown stated that the officers denied his request for an attorney and physically abused him, thereby forcing Brown to confess.

Defendant Harper did not testify. Lucy Wilson, defendant Harper's grandmother, testified to the Harper jury that Harper was at her house between 1:30 a.m. and 5 or 5:30 a.m. on May 28, 1988. Roberta Holmes, Harper's mother, testified to both juries that there was no insurance covering the video store, and she testified to the Brown jury regarding the value of the video tapes and the fact that the video tapes had been removed from the store in order to conduct inventory.

Defendant Brown first maintains that the trial court erred when it failed to grant his motion for acquittal after the jury returned a verdict acquitting him of both arson and aggravated arson. During the instruction conference, the trial court decided to give the jury seven verdict forms. Four verdict forms pertained to the murder charges and three pertained to the charges of arson and aggravated arson. The court noted its reason for having one not guilty form relating to both aggravated arson and arson was that it "will prevent the distress the jury may have if they feel he is guilty of one, but not both, or if he is guilty of one, what do they do with the other." Brown's attorney stated that he had no objection to this instruction. The jury then received the following verdict forms pertaining to arson and aggravated arson:

"We, the jury, find the defendant, Arthur Brown, not guilty of either aggravated arson or arson.

We, the jury, find the defendant, Arthur Brown, guilty of aggravated arson.

We, the jury, find the defendant, Arthur Brown, guilty of arson."

During deliberations, the jury sent out a note stating:

"If we can't reach an agreement on aggravated arson, are we allowed not to sign the finding sheets for that charge?"

The trial court informed the jury that it "must sign one of the three verdict forms concerning the fire."

The jury returned a verdict finding defendant Brown guilty of both counts of first-degree murder and guilty of arson, as well as not guilty of either aggravated arson or arson. Defense counsel moved for an acquittal on all counts, since the murder counts were predicated on the commission of the underlying felony of either arson or aggravated arson. The trial court stated to the jury:

"Ladies and gentlemen, perhaps my verdict forms have confused you. Ordinarily, we give guilty and not guilty verdict

forms as to each charge. If I did that, if you found—I was worried that if you found the defendant on one charge, that you would have difficulty knowing what to do with the other....So, I gave you three verdict forms. If you sign only one, doing whatever it is you think the State has or has not proven, that will be the response to all charges. You don't have to worry about the not guilty. That comes automatically with your findings.

So again, do either of these verdict forms represent your view, I will ask you, [jury foreperson], do either of these verdict forms that the deputy has represent your view?

THE FOREPERSON: Yes.

THE COURT: Are you finding that the State failed to prove the defendant guilty of either aggravated arson or arson?

THE FOREPERSON: Of one of these two.

THE COURT: And you have found him guilty of which charge?

THE FOREPERSON: Arson.

THE JURORS: Arson.

THE COURT: Then I will ask you to take back those two that you have, and destroy the one that does not represent your view and buzz us back, and we will be here waiting for you. You can step out.

A JUROR: Can we do it right now?

THE COURT: I want to make sure all of you are in agreement.

A JUROR: Well, we are."

The jury then returned a verdict of guilty as to arson.

■ Defendant Brown claims that when the jury returned with its inconsistent verdicts, the trial court coerced the jurors into finding defendant guilty of arson. However, the record does not support defendant's contention. The finding of a jury does not become a verdict until it has been received, accepted by the court and entered of record. (*People v. Almo* (1985), 108 Ill. 2d 54, 483 N.E.2d 203.) When a jury returns inconsistent verdicts, it is the duty of the trial judge to preserve the integrity of the trial. (*Almo*, 108 Ill. 2d at 63.) The trial court here merely questioned the jurors in order to determine whether one of the verdict forms represented the jury's findings. The jurors unequivocally stated that they had already made their decision to find Brown guilty of arson. The court in no way influenced the jurors' decision. The jurors were undeniably confused by the verdict forms. They thought that if they found defendant guilty of arson, they also had to find him not guilty of aggravated arson. The problem here

was that one form stated that defendant was found not guilty of aggravated arson while also stating the defendant was found not guilty of arson. Certainly separate not guilty forms for arson and aggravated arson should have been used in order to avoid any confusion. However, in light of the fact that the jury undoubtedly found defendant guilty of arson and the trial court did nothing more than clarify the jury's decision, there is no reason to acquit defendant Brown.

■ Defendant Brown next contends that the trial court erred when it refused to tender to the jury instructions defining involuntary manslaughter. When there is evidence in the record which, if believed by the jury, would reduce the crime of murder to manslaughter, an instruction defining the lesser crime should be given. (*People v. Foster* (1987), 119 Ill. 2d 69, 518 N.E.2d 82.) To sustain a conviction for involuntary manslaughter, the action which caused the death must have been performed recklessly. (720 ILCS 5/9—3 (West 1992).) Our careful review of the record reveals absolutely no evidence to support defendant's theory of recklessness. In his statement, Brown stated that Harper told him he was going to burn the store down by pouring gas over the mattresses and around the store. Brown admitted that he knew Harper was going to set the store on fire and Brown agreed to help make it look as if the store had been burglarized. Moreover, Brown saw Harper pour gasoline all over the back of the store. That Brown used to own a store in the same building and knew that the owner of the Chinese restaurant sometimes spent the night in the store negates any claim that defendant Brown acted recklessly. Accordingly, the trial court properly refused to tender to the jury an involuntary manslaughter instruction.

We therefore affirm the two issues raised by defendant Brown and turn now to the issues raised by defendant Harper. Before reaching the merits of these issues, we must note that while defendant Harper raises numerous issue of error in his trial, few if any of these errors were objected to at trial. Nonetheless, if we determine that defendant has waived the right to raise these issues on appeal, we are inviting defendant to come in with a post-conviction petition claiming that he was denied effective assistance of counsel. We therefore will address these issues so as to determine whether defendant Harper received a fair trial.

■ Defendant Harper's first contention is that the wife of victim Kiert Phopairat should not have been permitted to testify that she was married to the victim, had a young child, and was unable to identify her husband's body since she had undergone major surgery and had just been released from the hospital at the time of her husband's

death. Defendant contends that this testimony was irrelevant and was introduced only to garner sympathy for the victim. The State contends that it properly called the victim's wife as a life and death witness to establish the identity of the victim, the fact that the victim had been alive prior to the events leading to the prosecution of the defendant and that the victim is now deceased. (See *People v. Barrow* (1989), 133 Ill. 2d 226, 549 N.E.2d 40; *People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208.) We agree with the defendant that the testimony of the victim's wife served no purpose other than to prejudice defendant. The victim's wife neither identified the victim at the morgue, nor identified a photograph of the victim at trial. She therefore failed to establish the identity of the victim and the fact that he was deceased.

Defendant Harper next contends that the trial court erred in allowing the State to introduce a photograph of the victims prone in an unnatural position. The decision whether to allow a jury to see photographs of a decedent is made by a trial court in the exercise of its sound discretion. (*People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234.) If photographs are relevant to prove facts at issue, they are admissible and can be shown to the jury unless their nature is so prejudicial and so likely to inflame the jurors' decisions that their prohibitiveness is outweighed. (*Henderson*, 142 Ill. 2d at 319.) When a defendant in a murder trial pleads guilty, the prosecution is permitted to prove every element of the crime charged and every relevant fact, even if the defendant offers to stipulate to those same facts. (*People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208.) Photographs of a decedent may be admitted to prove the nature and extent of the injuries and the force needed to inflict them; the position, condition, and location of the body; the manner and cause of death; to corroborate defendant's confession; and to aid in understanding the testimony of a witness. *People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234.

■ Here, we do not believe that the trial court abused its discretion in allowing the State to introduce the photographs. The medical examiner testified that the victims died of smoke inhalation. He reached this conclusion in part due to the presence of soot deposits over the victims' nostrils and mouths. The photographs clearly depict the presence of these soot deposits and, therefore, helped the jury in understanding the testimony of the medical examiner. Although defendant Harper contends that the photographs portray the victims prone in an unnatural-looking position, there is nothing in the record to indicate that the photographs of the victims do not portray them where and how they were found. In fact, fireman Brannegan testified

that the photographs correctly depicted the way in which the bodies were found.

Defendant Harper next contends that the gas can was improperly entered in to evidence because it was neither unique nor readily identifiable and an insufficient chain of custody was presented at trial. A foundation for the admission of physical evidence may be made through its identification or through establishment of a chain of possession. (*People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840.) The propriety of admitting real evidence rests within the sound discretion of the trial court, and the reviewing court will not reverse absent a showing that the trial court abused its discretion. *People v. Holman* (1987), 157 Ill. App. 3d 764, 510 N.E.2d 1139.

■ To establish a proper chain of custody, the State need not exclude every possibility that the evidence may have been tampered with or substituted but, rather, must show that to a reasonable probability the evidence has not been changed in any important aspect. (*People v. Roundtree* (1985), 135 Ill. App. 3d 1075, 482 N.E.2d 693.) The gas can here was certainly not unique. Furthermore, the State failed to establish a proper chain of custody since there was no testimony that the gas can received in evidence was the same gas can recovered by Detective Campbell at the scene of the crime.

Defendant Harper next contends that the prosecutor made improper comments in closing argument when he: (1) highlighted Harper's decision not to testify; (2) misstated the State's burden of proof; (3) told the jury to convict Harper to recompense the victims; (4) overstated the evidence; (5) improperly used limited testimony; and (6) improperly characterized Harper as greedy.

■ Harper first contends that the prosecutor commented indirectly on Harper's decision not to testify when he stated:

"They want you to forget who is on trial here. That is the guy on trial. He and his partners, they are the ones on trial, not the police, not Joel Whitehouse, not Dave Cuomo, not me. It is the People of the State of Illinois versus Michael Harper, Arthur Brown, Geronia Ford, Albert Harper. That is who is on trial.

\* \* \*

Did you hear any testimony from that stand, from any witnesses, that the statement that you were told about from the police and the State's Attorney was not true? Did anybody tell you it was false, a lie, forced?"

A defendant has a constitutional right not to testify, and the prosecution is forbidden from referring either directly or indirectly to defend-

ant's failure to testify. (*People v. Benoit* (1992), 240 Ill. App. 3d 185, 608 N.E.2d 250.) In determining whether a defendant's right to remain silent has been violated, a court will consider whether the reference was intended or calculated to direct the attention of the jury to defendant's failure to testify. (*People v. Franklin* (1990), 135 Ill. 2d 78, 552 N.E.2d 743.) Based on this test, it is our opinion that the prosecutor improperly drew attention to defendant's failure to testify when he commented that the jury heard nothing from the witness stand to indicate that defendant's statement was a lie. See *People v. Howard* (1991), 147 Ill. 2d 103, 588 N.E.2d 1044 (prosecutor improperly commented that there was no evidence from the witness stand that defendant's statement was wrong); *People v. Benoit* (1992), 240 Ill. App. 3d 185, 600 N.E.2d 250 (prosecutor improperly commented that there was no testimony from the witness stand that defendant's statement was untrue).

Defendant Harper next takes issue with the prosecutor's comment:

"I can't even begin to try to figure out his real reason; If it was money, tapes, or just didn't want the store any more. Who knows, but I know one thing, he is guilty * * *.

\* \* \*

I don't care what his mom says on the witness stand. I am not an evil person. I feel sorry that she came into the courtroom and had to say what she did for her son. I understand that. I understand his grandmother saying the same thing, but they didn't tell you the truth. The truth is he is guilty.

\* \* \*

* * * [S]he got up on the stand and lied for her son, ladies and gentlemen, and that is all I can say. She lied."

Defendant claims that in making these comments, the prosecutor improperly expressed his personal opinion of defendant Harper's guilt and the credibility of defense witnesses.

A prosecutor may not express his personal opinion of the strength of the State's case or the defendant's guilt. (*People v. Clark* (1983), 114 Ill. App. 3d 252, 448 N.E.2d 926 (prosecutor improperly commented that he believed the State's case to be overwhelming).) Although it is good practice for prosecutors to avoid using sentences beginning with "I think" or "I believe," error does not result every time a prosecutor uses these or similar words. A prosecutor may state an opinion which is based on the record or on a legitimate inference derived from the record. (*People v. Johnson* (1987), 119 Ill. 2d 119, 518 N.E.2d 100; see also *People v. Baker* (1990), 195 Ill. App. 3d 785,

787, 552 N.E.2d 421 (prosecutor properly commented: "That *** provides the proof, I believe, beyond a reasonable doubt, as her testimony is uncontroverted in this case ***. If ever there was a situation where a person was detained, I think it was demonstrated by the testimony of Theresa Taylor. *** I think it could be reasonably inferred from the evidence that she feared for herself").) Here, we find the prosecutor's comments improper since he did more than simply comment on the evidence. He expressed his opinion as to defendant's guilt.

Defendant Harper next contends that the prosecutor misstated the burden of proof when he stated:

"Do you think they would have done that? If it was a frame, they would not have let him pull himself back ***.

* * *

You heard the testimony from the guy at the gas station, a nice old guy. He didn't come in here and get up there—was he part of the frame, too? He saw that same Ford four blocks away shortly before the fire started with two other guys buying gasoline. Maybe he is part of the frame."

Defendant claims the prosecutor in *People v. Wilson* (1990), 199 Ill. App. 3d 792, 796, 557 N.E.2d 571, similarly commented:

"Is it curious to anyone that the defense would have you believe everybody in this case is guilty except the Defendant? [State's witness] Kondel committed perjury. The State's Attorney is guilty of trying to frame someone. [The victim] is guilty."

The court found that these comments conveyed to the jury that defendant carried the burden of proof to establish his innocence and in order to meet his burden of proof had to show that the witnesses lied. In the instant case the prosecutor's reference to the State trying to frame defendant was used in a different context than in *Wilson*. Here, the prosecutor merely was disputing the theory of defense, he did not shift the burden of proof.

Defendant Harper next takes issue with the prosecutor's comment:

"Ladies and gentlemen, we speak for the victims in this case. They died. Don't let them have died for absolutely nothing. This man killed them.

* * *

When you go back there, you take out your pens and sit down and tell these two victims they didn't die for nothing. At least that will be remedied, and it will be remedied today."

Defendant contends, and we agree, that this argument is irrelevant to defendant's guilt and compounds the prejudicial impact of the testimony of victim Phophairat's wife. See *People v. Ramirez* (1983), 98 Ill. 2d 439, 457 N.E.2d 31.

Harper next argues that the State overstated the evidence when it commented in opening argument that the victims burned to death and in closing argument that the victims were burned alive. The undisputed evidence at trial was that the victims died of smoke inhalation, not burns. The prosecutor's comments were clearly in error since he was required to confine his argument in opening argument to evidence that would be produced at trial and any legitimate inference therefrom (*People v. Warmack* (1980), 83 Ill. 2d 112, 413 N.E.2d 1254), and in closing argument to the evidence presented at trial and any reasonable inference that follows from it. *People v. Linscott* (1991), 142 Ill. 2d 22, 566 N.E.2d 1355.

Defendant Harper next contends that Detective Kutz and Assistant State's Attorney Whitehouse were improperly permitted to testify that codefendant Geronia gave a court-reported statement to police. We find no error in this testimony since an officer or State's Attorney may properly testify concerning investigatory procedures if the substance of a conversation is not revealed, even though the jury could reasonably infer therefrom that the accomplice implicated the defendant. See *People v. Moman* (1990), 201 Ill. App. 3d 293, 558 N.E.2d 1231.

Defendant also contends that the prosecutor improperly commented that, "He set it, him and his buddies, and his friends. They set the store on fire. They admitted that to the police ***." The prosecutor's closing argument was based on defendant Harper's statement, which described how the fire was started and how Arthur Brown, Jerome Ford and Albert Harper helped start it. However, the prosecutor overstated the evidence when he stated that the people who helped Harper burn the shop admitted to police that they set the fire. Harper's statement did not contain such testimony.

Defendant Harper next contends that the State inaccurately characterized, in opening and closing argument, Harper as greedy, slick, smart and a con artist who burned the tapes in order to collect insurance money and who approached the police before they approached him. We find these comments to be reasonable inferences from the evidence and within the recognized legitimate boundaries. See *People v. Robinson* (1989), 199 Ill. App. 3d 24, 556 N.E.2d 1204.

Defendant next contends that he was prejudiced by his simultaneous but separate trial with codefendant Brown. Although Michael

Harper and Arthur Brown were indicted together, because they gave confessions implicating each other, Harper and Brown were tried simultaneously before two juries in the same court room. The dual jury procedure is not *per se* unconstitutional. (*Smith v. DeRobertis* (7th Cir. 1985), 758 F.2d 1151.) The two-jury procedure is acceptable in Illinois "where a defendant is given every opportunity to present a complete defense before one jury, cannot point to any event which confused the jury or affected its ability to render a decision fairly, and the record shows that the trial judge adequately prepared the jurors for the procedure." (*People v. Gholston* (1984), 124 Ill. App. 3d 873, 888, 464 N.E.2d 1179, 1190.) The reviewing court will not speculate as to the impropriety of the procedure, but rather, must be shown the prejudice that resulted from the dual jury trial. (*Gholston*, 124 Ill. App. 3d at 888.) As the following discussion reveals, defendant Harper was in fact prejudiced by the dual jury trial.

■ Assistant State's Attorney Joel Whitehouse testified to the Harper jury regarding Harper's confession and he testified to the Brown jury regarding the Brown confession. When Whitehouse testified to the Harper jury, however, he confused portions of Brown's confession with portions of Harper's confession. Defense counsel on cross-examination asked Whitehouse whether Harper stated in his confession that he gave somebody keys to the video store, and Whitehouse responded, "I don't know if it was Micheal Harper or the co-defendant. All the statements when put together indicate—." The prosecutor then asked Whitehouse whether Harper said that he did anything with the mattresses. Whitehouse responded that, "He didn't, but the person he called on the telephone, Arthur [Brown] did." In Harper's statement, however, he never said that he called Brown on the telephone. It was Brown, in his statement, who said that he received a telephone call from Harper to meet Harper at the video store.

The State also confused the Brown confession with the Harper confession during closing argument. When Whitehouse testified to the Brown jury, he stated that Brown had pulled himself back from his oral statement when he corrected portions of a written summary. The State presented no such testimony to the Harper jury. Despite this fact, the State commented to the Harper jury:

"Then he gives the court reported statement, he talks about knowing about the two orientals being next door. He knows that, because he talked to them. He gives this court reported statement and pulls himself back a little bit to make himself less incriminating."

However, Whitehouse testified at trial that Harper's oral statement was substantially similar to his court-reported statement.

Furthermore, during closing argument, the prosecutor stated:

"And later on in his statement to the police, he tells them I know the Chinese people were there. I know they had a habit of staying overnight there. I know they stayed over there at night because we had some problems with burglaries."

Such testimony as to the victims remaining in the store because of burglaries was presented to the Brown and not the Harper jury.

Moreover, the State confused the testimony Roberta Holmes gave to the Brown jury with the testimony she gave to the Harper jury. She testified to the Brown jury about the existence of video tapes in the trunk of the Ford Bronco, the number of video tapes in the trunk, the value of the video tapes, and that the video tapes were in the trunk because her family was conducting inventory. She testified to none of these facts in front of the Harper jury. In rebuttal closing remarks to the Harper jury, however, the prosecutor referred to Holmes' testimony regarding taking inventory, and the implausibility of this explanation for the removal of the video tapes. The prosecutor also referred to Holmes' testimony regarding the value of the video tapes.

Defendant relies on *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, wherein the Supreme Court held that a defendant who has not confessed is deprived of his rights under the confrontation clause of the sixth amendment when his codefendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant. Furthermore, in *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714, the Supreme Court held that where a nontestifying codefendant's confession facially incriminating the defendant is not directly admissible against the defendant, the confrontation clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him. The court in *Cruz* explained:

"A codefendant's confession will be relatively harmless if the incriminating story it tells is different from that which the defendant himself is alleged to have told, but enormously damaging if it confirms, in all essential respects, the defendant's alleged confession. It might be otherwise if the defendant were *standing by* his confession, in which case it can be said that the codefendant's confession did no more than support the defend-

ant's very own case. But in the real world of criminal litigation, the defendant is seeking to *avoid* his confession—on the ground that it was not actually reported, or that it was not really true when made." (Emphasis in original.) (*Cruz*, 481 U.S. at 192, 95 L. Ed. 2d at 171, 107 S. Ct at 1718-19.)

A nontestifying codefendant's statement must be considered presumptively unreliable when it interlocks with a defendant's own statement where defendant asserts that his own statement is unreliable. (*People v. Collins* (1989), 184 Ill. App. 3d 321, 539 N.E.2d 736.) The codefendant's statement is not admissible unless there is independent indicia of reliability. *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056.

The situation here is different from *Bruton* and *Cruz* in that, here, the defendants were tried by two different juries. Nonetheless, the dual jury procedure caused confusion when the Harper jury received information that was admissable only to the Brown jury. "Issues of facts before each jury, who testified before which jury, and even which jury is hearing which testimony can all too easily become confused" when dual juries are used. (*People v. Rainge* (1983), 112 Ill. App. 3d 396, 419, 445 N.E.2d 535, 551.) In the instant case, Brown did not testify against Harper. Furthermore, defendant Harper obviously sought to deny the truth of his own statement because he presented an alibi witness. We cannot ignore the prejudicial effect of Whitehouse's testimony divulging to the Harper jury the specific contents of a nontestifying codefendant's out-of-court statement which implicates Harper. Nor can we disregard the impact of the prosecutor's comments that conflict with testimony the State presented to the Harper jury and divulged the contents of Brown's statement. (See *People v. Campbell* (1983), 115 Ill. App. 3d 631, 450 N.E.2d 1318 (prosecutor's closing statement violated *Bruton*).) Moreover, we do not believe that there is sufficient independent indicia of reliability so as to allow the admission of information from Brown's confession. We therefore conclude that defendant Harper was indeed prejudiced by the dual jury trial when the Harper jury was informed of evidence heard only by the Brown jury.

■ Defendant Harper's next contention is that the State failed to present sufficient evidence to corroborate Harper's confession. For a conviction of a crime based on a confession to be sustained, there must be corroborative evidence. (*People v. Holmes* (1977), 67 Ill. 2d 236, 367 N.E.2d 663.) *Corpus delicti*, that a crime occurred, is sufficient corroboration. (*People v. Pecoraro* (1991), 144 Ill. 2d 1, 578 N.E.2d 942.) Here, the confession was sufficiently corroborated by in-

dependent evidence. Investigators testified at trial that the cause of the fire was arson and that gas was used as an accelerant. Defendant's van was seen at a gas station shortly before the fire and someone from the van filled a gas can with gas. A gas can was found hidden in an alley not far from the fire. See *People v. Rosario* (1988), 166 Ill. App. 3d 383, 519 N.E.2d 1020.

Defendant Harper's next contention is that his statement at the police station was involuntary due to the failure of the police to apprise him of his *Miranda* rights upon arrival at the police station. A custodial interrogation is determined by whether an innocent person would have considered himself arrested or not free to leave. (*People v. Booker* (1991), 209 Ill. App. 3d 384, 568 N.E.2d 211.) Factors to be considered include time and place of confrontation, number of officers, presence or absence of family members, type of conduct normally found in a formal arrest proceeding, physical restraint or show of weapons and force, fingerprinting and method of transportation to the station. (*People v. Graham* (1991), 214 Ill. App. 3d 798, 573 N.E.2d 1346.) In addition, the subjective intent of police officers may be considered a factor. *People v. Johnson* (1989), 187 Ill. App. 3d 756, 544 N.E.2d 789.

Based on our review of the record, we do not believe that the trial court abused its discretion in denying defendant Harper's motion to suppress. Defendant Harper approached the officers and identified himself as the owner of the video store. An officer asked Harper if he could assist in the investigation of the fire, to which Harper responded yes. Harper then agreed to accompany the officers to the police station. (See *People v. Gorman* (1991), 207 Ill. App. 3d 461, 565 N.E.2d 1349.) Defendant was not handcuffed or restrained in any way and the testimony is clear that he was not a suspect at that time. Soon after they arrived at the station, Detective Kutz informed defendant that the store had been deliberately set on fire and asked defendant whether anybody had a grudge against him. At this time defendant was not a suspect. It was not until defendant stated that he owned a Ford van with license plate number GAS 403 and was the only one with keys to the van that there was probable cause to arrest defendant. Defendant was then properly and immediately given his *Miranda* rights.

Defendant next contends that the trial court erred in denying his motion to suppress since his statement was involuntary. Factors to consider in determining whether a statement was made voluntarily include the age, education or intelligence of the accused, the accused's prior experience, if any, with the criminal justice system, the duration

of both the detention and the interrogations, whether the accused was advised of his constitutional rights, and whether defendant was subjected to physical mistreatment or abuse. (*People v. Terrell* (1989), 132 Ill. 2d 178, 547 N.E.2d 145.) A trial court's finding that a statement was voluntarily made will not be reversed unless it is against the manifest weight of the evidence. *People v. House* (1990), 141 Ill. 2d 323, 566 N.E.2d 259.

We have no reason to believe that defendant's statement was not voluntarily made. Defendant was given his *Miranda* rights and there is nothing to indicate that he did not understand his rights. There is absolutely no evidence that defendant was physically or mentally coerced into giving the statement. The fact that defendant was arrested approximately eight hours before giving his statement does not alone make his statement involuntary, particularly in light of the fact that during this time, defendant was allowed food, drink and the opportunity to use the washroom. See *People v. Matthews* (1990), 205 Ill. App. 3d 371, 562 N.E.2d 1113.

Accordingly, defendant Brown's conviction is affirmed. As to defendant Harper, many errors occurred in his trial. The most damaging was the introduction of portions of codefendant Brown's confession into Harper's trial. In addition, improper witness testimony was introduced at trial and the prosecutor made several improper comments during Harper's trial. While each of these errors in isolation may not be enough to warrant a new trial, the cumulative impact of these errors certainly denied defendant a fair trial. We note that on remand, the trial court should tender to the jury one verdict form stating that defendant is found not guilty of arson and one stating that defendant is found not guilty of aggravated arson. This will prevent the Harper jury from experiencing the same confusion that the Brown jury experienced.

For the aforementioned reasons, defendant Brown's conviction is affirmed and defendant Harper's conviction is reversed and remanded.

Affirmed in part; reversed in part and remanded in part.

GORDON, P.J., and MURRAY, J., concur.