1998-NMCA-088

964 P.2d 829

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**David PADILLA, Defendant–Appellant.**

No. 17521.

Court of Appeals of New Mexico.

May 7, 1998.

Certiorari Denied June 25, 1998.

Tom Udall, Attorney General, William McEuen, Assistant Attorney General, Santa Fe, for Plaintiff-Appellee.

Sandra J. Clinton, Albuquerque, for Defendant-Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant appeals his convictions of three counts of armed robbery, two counts of conspiracy to commit armed robbery, and one count of attempt to commit armed robbery. Defendant raises seven issues on appeal, including a due-process challenge to the trial court's use of dual juries in his joint trial with codefendant Alex Sanchez (Sanchez). Only the portion of the opinion examining the dual-jury procedure merits publication. We address Defendant's other issues in a separate memorandum opinion. We affirm Defendant's convictions.

*Facts*

{2} The charges stem from a series of robberies that occurred in Albuquerque dur-

ing early November 1994 and exhibited the same *modus operandi*. The robber targeted a business open late at night, carried a concealed hammer, demanded cash from the cash register, and if refused, used the hammer to bang the cash register open. Two robberies and one attempted robbery occurred during the evening of November 4 and early morning of November 5. The robber struck an Allsups convenience store around 9:00 p.m. on November 4 while Terry Bui (Bui) worked as the cashier. A few hours later, he robbed a Dunkin Donuts store while Phyllis Sandoval (Sandoval) worked as the cashier. The baker, George Woody (Woody), foiled the robbery by throwing his rolling pin at the robber as the robber exited the door. The robber suffered an injury, and the State collected and analyzed blood found on the floor near the door. Woody witnessed the getaway and described the vehicle used.

{3} Less than one-half of an hour later, another Dunkin Donuts store was robbed while Trinidad Hooker (Hooker) worked as the cashier. Although Oscar Rivota (Rivota), the baker, chased the robber out of the store, the robber got away with the cash drawer. A customer, Inez Barela (Barela), witnessed the robbery, and a neighbor, Ron Holser (Holser), witnessed the getaway. He recalled the getaway car's general description and license plate number, and clearly saw the driver.

{4} The final robbery occurred at 3:00 a.m. on November 11, at a Circle K store, where Matt Zamora (Zamora) worked as the cashier. A neighbor, who arrived just after the robbery, testified that the one car in the parking lot—which resembled the car seen at the second Dunkin Donuts store—sped off when he arrived. He described the driver and the passenger as Hispanic males.

{5} The police determined that Sanchez was the registered owner of the car spotted by Holser. Holser positively identified Sanchez as the driver from a photo array and made an in-court identification. Sandoval positively identified Defendant as the robber from a photo array and made an in-court identification. She and Woody had worked with Sanchez at Dunkin Donuts. During

that time, she had spoken to Defendant on the phone when he had called for Sanchez, and she had seen Defendant once in person. Bui identified Defendant from a photo array. Hooker also identified Defendant as the robber from a photo array and made an in-court identification. Barela, witness to the second Dunkin Donuts robbery, identified Defendant in court as the robber. Finally, Zamora also identified Defendant as the robber from a photo array.

*Dual–Jury Trial*

{6} We presume that the use of dual juries is relatively rare in New Mexico because our appellate courts have not had the opportunity to review the procedure. Other jurisdictions have employed dual juries to prevent potential Sixth Amendment right to confrontation problems during a joint trial of codefendants since the United States Supreme Court decided *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *See* David Carl Minneman, Annotation, *Propriety of Use of Multiple Juries at Joint Trial of Multiple Defendants in State Criminal Prosecution*, 41 A.L.R.4th 1189, 1190 (1985 and Supp.1997). *Bruton* determined that a curative or limiting jury instruction is ineffective to remove the prejudice that a defendant suffers when the state introduces at a joint trial with one jury a statement by a non-testifying codefendant which incriminates the other defendant. *See id.* at 124–26, 88 S.Ct. 1620.

{7} Here, a potential *Bruton* problem existed. Sanchez consented to a search of his car during the police investigation. During the search, the police seized a Dunkin Donuts check stub from the passenger compartment and a jacket from the trunk. Sanchez identified the jacket as belonging to Defendant. Sanchez confessed to his role in the robberies, and admitted concerted action with Defendant. Prior to trial, Defendant moved to sever his trial from that of Sanchez and the trial court determined that Defendant was entitled to relief under Rule 5–203(C) NMRA 1998.

■ {8} The issue in this case is whether the court acted within its discretion to em-

panel dual juries to resolve the *Bruton* problem. *See State v. Richter*, 93 N.M. 55, 57, 596 P.2d 268, 270 (Ct.App.1979) (admission of the confessions of codefendants where neither takes the stand is a *Bruton* problem). Defendant does not challenge the legality of the procedure. Authority to employ dual juries implicitly derives from the trial court's discretion to provide "whatever other relief justice requires" when a defendant files a motion to sever under Rule 5–203(C). *See State v. Beam*, 109 Idaho 616, 710 P.2d 526, 533 (Idaho 1985) (finding implicit authority from court rule providing motion for severance); *State v. Bowman*, 588 A.2d 728, 733 (Me.1991) (finding implicit authority in the comparable language of the rules of criminal procedure); *People v. Ricardo B.*, 73 N.Y.2d 228, 538 N.Y.S.2d 796, 798, 535 N.E.2d 1336 (1989) (determining that power to employ multiple juries logically implied from terms of statute granting court broad discretion to facilitate performance of its responsibilities).

■ {9} We consider the use of dual juries to be a modified severance of Defendant's trials. *See United States v. Rowan*, 518 F.2d 685, 689–90 (6th Cir.1975) (use of two juries viewed as a partial severance); *Hedlund v. Sheldon*, 173 Ariz. 143, 840 P.2d 1008, 1011 (Ariz.1992) (en banc) (use of dual juries within the trial court's discretion to sever); *People v. Cummings*, 4 Cal.4th 1233, 18 Cal.Rptr.2d 796, 830, 850 P.2d 1 (1993) (en banc) ("The use of dual juries is a permissible means to avoid the necessity for complete severance."); *People v. Hana*, 447 Mich. 325, 524 N.W.2d 682, 698 (Mich.1994) (dual juries permissible absent prejudice); *Ricardo B.*, 538 N.Y.S.2d at 798, 535 N.E.2d 1336 (use of dual juries allowed so long as procedure does not prejudice the defendant); *State v. Avery*, 215 Wis.2d 45, 571 N.W.2d 907, 910 (Wis.Ct. App.1997) (use of dual juries met requirements of severance where one codefendant provided a confession). As such, we review alleged error under the same standard of review as action on a motion to sever. *See People v. Irizarry*, 83 N.Y.2d 557, 611 N.Y.S.2d 807, 810, 634 N.E.2d 179 (1994) (use of dual juries is a modified form of severance and is reviewed under same standard as motion to sever). That standard of review is abuse of discretion and a defendant must

demonstrate prejudice. *See State v. Pacheco*, 110 N.M. 599, 604, 798 P.2d 200, 205 (Ct.App.1990).

{10} Defendant does not contend that the dual-jury procedure is *per se* prejudicial. No other jurisdiction has determined that severance by using dual juries is *per se* prejudicial. *See Beam*, 710 P.2d at 532 (list of jurisdictions holding that use of dual jury is not *per se* prejudicial); *Bowman*, 588 A.2d at 733–34 (same). Even when courts have refused to endorse the procedure, they have refused to reverse a conviction without evidence of prejudice. *See People v. Harris*, 47 Cal.3d 1047, 255 Cal.Rptr. 352, 369, 767 P.2d 619 (1989) (en banc) (list of jurisdictions which have not reversed conviction based upon dual-jury usage without prejudice).

■ {11} Instead, Defendant asserts two instances of prejudice, the first being juror misconduct. Defendant claims that one of the jurors on his panel discussed the case with jurors from both panels, but "[t]he trial court failed to obtain specific information as to what was said and to whom." The record does not support this contention.

{12} When Defendant informed the court that one of his jurors may have told another juror that DNA evidence was bogus, the court offered to remove the juror. However, Defendant suggested that the court first determine whether any impropriety had occurred, and "[i]f it's not true, then everything else is moot." The court called the juror to the bench for questioning while the trial was in recess. The court expressed concern that there had been discussions about the case among the jurors. It specifically asked the juror whether she had been involved in such discussions. The juror replied that she had not. The court then asked her whether she had discussed the case with other jurors, and she replied that she had not. Finally, the court asked her whether she had made up her mind in the case, and she again replied that she had not. The court admonished her to follow the court's initial instructions to the jury. Defendant did not pursue the matter further. Under these circumstances, there is no basis for error. *Cf. State v. Peterson*, 103 N.M. 638, 642, 711 P.2d 915, 919 (Ct.App.

1985) (defendant "ought not be heard to complain because the very relief he requested was granted").

{13} Second, Defendant maintains that the State committed a *Bruton* violation when Detective Richard Dilley testified that he obtained Sanchez' name through a license plate inquiry and subsequently compiled a photo array containing Defendant's photograph. Defendant contends that the jury would have necessarily inferred that the investigation focused on Defendant because Sanchez implicated him. He claims that the prejudice is the same as if Sanchez' statements had been admitted.

{14} There was no *Bruton* violation *per se*. *Bruton* reversed the defendant's conviction for a confrontation-clause violation because the evidence presented a substantial threat to the defendant's right to a fair trial. *See id.* at 136–37, 88 S.Ct. 1620. However, there is no "substantial threat" requiring reversal when there is no prejudice. The prejudice at issue must be both actual, not based on pure conjecture, and substantial in its impact on the defense. *Cf. State v. Gibson*, 113 N.M. 547, 559, 828 P.2d 980, 992 (Ct.App. 1992) (discussing prejudice in context of due process violation). Prejudice, though conceivable, remains speculative unless there is an appreciable risk that the jury convicted the defendant for illegitimate reasons. *See State v. Padilla*, 118 N.M. 189, 197, 879 P.2d 1208, 1216 (Ct.App.1994).

{15} When the State asked Detective Dilley to explain the process that he went through in compiling the photo arrays, Defendant objected on the basis of relevance and the court sustained the objection. Defendant's objection would suggest to the jury that they should not be concerned with the reason why the detective included Defendant in the photo array. Further, the court instructed the jury to determine the facts from the evidence presented, and not to render a verdict "based on speculation, guess or conjecture." Also, the State's evidence offered a reasonable explanation why Defendant became a suspect. Sandoval testified that she had worked with Sanchez at Dunkin Donuts and that Defendant and Sanchez were friends. Further, Defendant physically fit the description of the perpetrator given by the witnesses. Under these circumstances, and in light of substantial testimony identifying Defendant as the perpetrator, there is no indication that the jury would have been aware of any confession by Sanchez. *See People v. Rainge*, 112 Ill.App.3d 396, 68 Ill. Dec. 87, 445 N.E.2d 535, 550 (Ill.App.Ct.1983) (no showing that jury apprised of codefendant's confession when there were other possible conclusions from the evidence regarding the source of police leads). We conclude that Defendant's allegation of prejudice is simply speculative. *See People v. Brown*, 253 Ill. App.3d 165, 192 Ill.Dec. 26, 624 N.E.2d 1378, 1389 (Ill.App.Ct.1993) ("The reviewing court will not speculate as to the impropriety of the procedure, but rather, must be shown the prejudice that resulted from the dual jury trial."); *Irizarry*, 611 N.Y.S.2d at 810–11, 634 N.E.2d 179 (speculative prejudice insufficient ground for reversal).

{16} Nor do we see evidence of confusion or impropriety in the dual-jury proceedings. At the beginning of trial, the court explained the dual-jury procedure to the juries and cautioned them not to speculate about the reason for two juries, and not to discuss the case with members of their jury or of the other jury. Throughout the trial, the court reminded the juries of these initial instructions.

{17} The court cautioned counsel to ensure that no witness inadvertently testified to any inadmissible statement from Sanchez while Defendant's jury was present. The court warned the State that Defendant would get a mistrial if any portion of these statements came before Defendant's jury. Except for the testimony of two witnesses, the evidence was admissible in both cases. The court had these witnesses testify before or after a natural break during the trial. The court dismissed both juries for break before the commencement of Detective Steven Gallegos' brief testimony before the Sanchez jury. The court retrieved Defendant's jury from break, and proceeded with testimony from Officer Kenneth Salazar and Detective Dilley. After the portion of Detective Dilley's testimony that was admissible against

Defendant and Sanchez, the court released Defendant's jury early for lunch and resumed with testimony before the Sanchez jury. After a long lunch break, Defendant's jury returned for Defendant's cross-examination of Detective Dilley and the State's redirect. The court released Defendant's jury early for the rest of the day while the Sanchez jury heard closing arguments. The record also reveals that Defendant was able to select his jury, to address the jury by opening statement and closing argument, and to present his defense.

 {18} Under the circumstances of this case, the trial court did not abuse its discretion in empaneling a dual jury to prevent a *Bruton* problem. *See People v. Ruiz*, 94 Ill.2d 245, 68 Ill.Dec. 890, 447 N.E.2d 148, 153–54 (Ill.1982) (similar factors found to be determinative of a fair trial); *People v. Johnson*, 150 Ill.App.3d 1075, 104 Ill.Dec. 41, 502 N.E.2d 304, 314 (Ill.App.Ct.1986) (similar indicia of a fair trial); *cf. Brown*, 192 Ill.Dec. 26, 624 N.E.2d at 1389–90 (defendant prejudiced when the state confused the substance of the two separate confessions so that jury was exposed to inadmissible evidence). Nevertheless, we caution trial courts to bear in mind that the dual-jury procedure has the potential for engendering error, especially in complex cases, and requires great diligence on the part of the trial judge and cooperation of the attorneys to take the precautions necessary to ensure due process throughout the joint trial. *See Velez v. State*, 596 So.2d 1197, 1199–1200 (Fla.Dist.Ct.App.1992) ("use of dual juries is rife with the *potential* for error or prejudice" but concluding that no error occurred in that particular case); *Beam*, 710 P.2d at 534 (decision to use dual juries should be carefully made); *Ricardo B.*, 538 N.Y.S.2d at 799, 535 N.E.2d 1336 (court must ensure that justice will be done).

*Conclusion*

{19} We conclude that Defendant failed to establish that he was prejudiced by the dual-jury trial. By a separate memorandum opinion, we deny Defendant's motion for relief on the other six issues raised by his appeal. Thus, Defendant's convictions are affirmed.

{20} **IT IS SO ORDERED.**

ALARID and FLORES, JJ., concur.