2021 IL App (1st) 180863-U

No. 1-18-0863

Order filed March 22, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 1752 |
| | ) | |
| KEENAN LEVY, | ) | Honorable |
| | ) | Allen F. Murphy, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justice Hyman concurred in the judgment and Justice Pierce dissented.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for unlawful use or possession of a weapon by a felon is reversed where trial counsel was ineffective for failing to file a motion to suppress a gun; cause remanded for a suppression hearing.

¶ 2    Following a bench trial, defendant Keenan Levy was found guilty of unlawful use or possession of a weapon by a felon and sentenced to two years' imprisonment. On appeal, he contends his counsel was ineffective for failing to file a motion to suppress a gun found on his person because the police officer who recovered the gun had no reason to believe he was

"dangerous" such that a frisk under *Terry v. Ohio*, 392 U.S. 1 (1968), was justified. In the alternative, defendant argues his counsel was ineffective for failing to file a motion to suppress premised on his unlawful arrest and search incident to that arrest, which produced the gun. We reverse and remand for a suppression hearing.

¶ 3                                    **BACKGROUND**

¶ 4      Defendant was charged with one count of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1)/(3)(c) (West 2016)), which alleged he knowingly carried a gun on or about his person when he had not been issued a valid Firearm Owner's Identification (FOID) card, and when he had previously been convicted of possession of a controlled substance. Defendant was also charged with one count of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2016)), which alleged he knowingly possessed a gun on or about his person when he had previously been convicted of felony possession of a controlled substance. As defendant only challenges his trial counsel's decision not to file a motion to suppress the gun, we recite only the facts necessary to decide this appeal.

¶ 5      John Ramos testified he worked "outside security" at Adrianna's nightclub on January 10, 2016. His duties included searching patrons entering the nightclub using metal detectors; patrons were also required to empty their pockets and be "searched head to toe" by Ramos. Ramos searched each patron "at the back of the jacket, through the arms, down the torso, legs, boots, shoes, crotch." That night, as Ramos was searching a man entering the nightclub, he felt "a hard metal object" "[i]n between his crotch." Ramos, who owned and shot guns, "assumed it was a firearm." Ramos "detained" the man until Markham police arrived. When police arrived, Ramos

"explained the situation, what [he] thought it could be, [and] handed him over to the officers." The police recovered a gun from the man's body.

¶ 6     Markham police officer Carl Wright testified he was on duty, in uniform, and driving a marked police vehicle on January 10, 2016. At approximately 1:00 a.m., he responded to a call at Adrianna's nightclub. Wright spoke with "security officer" Ramos, who was detaining defendant. Wright identified defendant in court. The following exchange occurred:

> "Q. [ASSISTANT STATE'S ATTORNEY] Upon speaking to officer [*sic*] Ramos, did officer Ramos then turn over this defendant to you?
>
> A. [WRIGHT] Yes.
>
> Q. And what did you do upon the defendant being turned over to you?
>
> A. I patted him down.
>
> Q. Why did you do that?
>
> A. Officer Ramos stated he felt a handle of a firearm possibly between the subject's legs.
>
> Q. Upon patting down this defendant, was anything recovered?
>
> A. Yes.
>
> Q. What was recovered?
>
> A. .45 caliber firearm.
>
> Q. Where was that recovered from?
>
> A. It was in his drawers between his buttocks and his crotch."

¶ 7     Wright inventoried the gun and took defendant to the Markham police department. He identified the gun he recovered, and the State moved the gun into evidence.

¶ 8    On cross-examination, Wright testified he recovered the gun from defendant's underwear, which is what he meant by "drawers."

¶ 9    The State entered into evidence a certified copy of disposition reflecting defendant's 2013 conviction for felony possession of a controlled substance.

¶ 10    Defendant moved for a directed finding. The court acquitted defendant of AUUW, finding the State introduced no evidence he did not have a valid FOID card at the time of the incident. The court denied defendant's motion with respect to the UUWF count.

¶ 11    The court found defendant guilty of UUWF.

¶ 12    Defendant filed a motion for new trial, which the court denied. Defendant was sentenced to two years' imprisonment on the UUWF count.

¶ 13                                    **ANALYSIS**

¶ 14    On appeal, defendant contends his counsel was ineffective for failing to file a motion to suppress the gun. Specifically, defendant contends his counsel should have filed a motion to suppress because Wright did not have reason to believe he was "dangerous" such that it justified Wright's frisk. In the alternative, defendant argues that Wright did not have probable cause to arrest or search him subsequent to arrest. He asks that we reverse and remand for suppression proceedings.

¶ 15    A criminal defendant has the right to effective assistance of counsel. U.S. Const. Amend. VI. When a defendant is convicted, but did not receive adequate representation, he can seek relief to vindicate his constitutional right to counsel. *People v. Burnett*, 2019 IL App (1st) 163018, ¶ 9. To establish a claim of ineffective assistance of counsel, a defendant must show his counsel's representation fell below an objective standard of reasonableness and that he was prejudiced as a

result. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *People v. Scott*, 2015 IL App (1st) 131503, ¶ 28. A defendant must overcome a presumption that counsel's decision was the result of sound trial strategy. *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 38.

¶ 16    In the context of a claim that counsel was ineffective for failing to file a motion to suppress, a defendant must establish prejudice by demonstrating "the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15. A defendant has the burden to establish a factual basis demonstrating a motion to suppress would have been meritorious. *Burnett*, 2019 IL App (1st) 163018, ¶ 16.

¶ 17    Based on the record before us, we find a motion to suppress the gun would have been meritorious. At trial, Wright testified to the factual basis he believed gave him reasonable suspicion to frisk defendant under *Terry v. Ohio*, 392 U.S. 1 (1968), or probable cause to arrest him and conduct a search incident to arrest. See *In re Tyreke H.*, 2017 IL App (1st) 170406, ¶¶ 75, 81; *People v. Moorman*, 369 Ill. App. 3d 187, 199 (2006). He provided only one reason: Ramos stated "he felt a handle of a firearm possibly between [defendant]'s legs."

¶ 18    Possession of a gun in public is not categorically illegal. See *People v. Spain*, 2019 IL App (1st) 163184, ¶ 28 (citing *People v. Aguilar*, 2013 IL 112116, ¶ 22). The record on appeal supports a conclusion that, whether Wright's search of defendant was incident to arrest or part of a *Terry* stop, it violated defendant's Fourth Amendment rights. "Possession of a gun alone does not provide probable cause for an arrest." *People v. Wilson*, 2020 IL App (1st) 170443, ¶ 25. Ramos's statement did not assert any illegal behavior by defendant; it merely asserted Ramos felt what he believed to be the handle of a gun between defendant's legs. Thus, based on the record before us,

Wright's search that produced the gun appears to have been illegal, and would have supported a meritorious motion to suppress.

¶ 19    Despite what appears to be, based on this record, a Fourth Amendment violation, counsel did not file a motion to suppress the gun. Counsel's failure to do so prejudiced defendant. Possession of a gun is an element of both AUUW (720 ILCS 5/24-1.6(a)(1)/(3)(c) (West 2016)) and UUWF (720 ILCS 5/24-1.1(a) (West 2016)), so had the gun been suppressed, the State almost certainly would have been unable to prove any of the charges against defendant. Thus, "a reasonable probability exists that the trial outcome would have been different had the [gun] been suppressed." See *Henderson*, 2013 IL 114040, ¶ 15. Accordingly, we find counsel provided ineffective assistance by failing to file a motion to suppress the gun.

¶ 20                                          **CONCLUSION**

¶ 21    For the reasons stated, defendant's conviction is reversed, and the matter is remanded for a suppression hearing.

¶ 22    Reversed and remanded.

¶ 23    Justice Pierce, dissenting

¶ 24    The majority finds the failure to file a motion to suppress the gun found on defendant to be ineffective assistance because the police officer who recovered the gun had no reason to believe defendant was "dangerous" such that a frisk under *Terry* was warranted. I respectfully disagree that counsel was ineffective.

¶ 25    Here, defendant appeared at Adrianna's night club and voluntarily subjected himself to a physical search as a condition of entry. Ramos, a security guard at Adrianna's, searched each patron "at the back of the jacket, through the arms, down the torso, legs, boots, shoes, crotch."

Ramos searched defendant and felt "a hard metal object" "[i]n between his crotch." Based on his experience and familiarity with guns, Ramos, "assumed it was a firearm" and "detained" the man until Markham police arrived. When the police arrived, Ramos "explained the situation, what [he] thought it could be, [and] handed him over to the officers." The police also conducted a pat-down, felt what seemed to be a firearm and recovered a gun from defendant's pants.

¶ 26    The majority takes the position that had counsel filed a motion to suppress, based on these facts, the motion would have been successful. The majority's position is that because possession of a gun in public is not categorically illegal and because Ramos did not assert that defendant engaged in any illegal behavior, other than possessing a gun, the arresting officers did not have the right to conduct a *Terry* stop or perform a search incident to an arrest.

¶ 27    Initially, finding the failure to file a motion to suppress amounts to ineffective counsel should not be decided in this direct appeal because the record is not properly developed. Whatever facts we know about defendant's arrest were developed at trial and the only issue at trial was defendant's possession of a weapon and his status as a convicted felon. The State had no reason to establish the circumstances leading to defendant's arrest. Consequently, this issue is best developed in postconviction proceedings. *People v. Gayden*, 2020 IL 123505, ¶ 38.

¶ 28    In any event, the record does not support the conclusion that a motion to suppress would probably have been successful. The arresting officer was told by a security guard that someone tried to enter a nightclub and he thought the person was carrying a weapon. The officer did what he was obligated to do: he investigated.

¶ 29    A *Terry* stop is a type of police-citizen encounter which allows for a brief investigative detention, when supported by a reasonable, articulable suspicion of criminal activity. *Terry v.*

*Ohio*, 392 U.S. 1, 21 (1968); 725 ILCS 5/107-4 (West 2010). "An officer may make an investigatory stop if he or she reasonably infers from the circumstances that an offense has been committed or is about to be committed.*" People v. Henderson*, 266 Ill. App. 3d 882, 885 (1994). The question is whether the facts available to the officer warrant a person of reasonable caution to believe that the action which the officer took was appropriate. *People v. Houlihan,* 167 Ill. App. 3d 638, 642 (1988). An evaluation of a *Terry* stop necessarily entails balancing the need for the seizure against the invasion that the seizure entails. *Terry, 392 U.S. at* 21.

¶ 30 The facts of this case show that Officer Wright was justified in conducting a pat down of defendant. He had been informed by Ramos that Ramos believed defendant had a firearm secreted in his pants. Should Officer Wright have ignored what was relayed to him by Ramos? Carrying a concealed weapon into a nightclub in the early morning is not something to ignore. As *Terry* instructs, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonable prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. "The search is permissible only when the officers possess a reasonable belief, based on specific and articulable facts and reasonable inferences from those facts, that the individual was dangerous and could gain control of a weapon." *People v. Colyar*, 2013 IL 111835, ¶ 39.

¶ 31 The majority relies on *People v. Wilson*, 2020 IL App (1st) 170443, ¶ 25 to assert that "possession of a gun alone does not provide probable cause for an arrest." *Wilson* discussed the issue of whether, in order to establish probable cause for an observation of an open carry on private property, "the officers must have reason to believe the suspect is not the owner of the property or invitee on the property with permission of the owner." *Id.* ¶ 29. Clearly, Levy was not on private

property when he was attempting to enter Adrianna's. And a close reading of *Wilson* supports my contention that the possession of a firearm in public at a minimum sufficiently establishes grounds for a *Terry* encounter.

¶ 32    Common sense and human experience compel the conclusion that the last thing our citizens want is for police officers to shrug their shoulders and continue on their way when a citizen is confronted by someone with a gun. Citizens call the police because there is a safety question and common sense tells them that it is not *per se* OK to carry guns in public and they want the police to investigate. "Probable cause means more than bare suspicion. Probable cause exists where the arresting officer has knowledge of facts and circumstances that are sufficient to justify a reasonable person to believe that the defendant has committed or is committing a crime. [citations]. Probable cause is a practical, nontechnical concept that deals with the factual and practical considerations of everyday life on which reasonable and prudent persons—not legal technicians—act." *People v. Jones*, 215 Ill. 2d 261, 273-74. It cannot reasonably be argued that an experienced police officer, having been informed by a security guard that he believed defendant tried to enter a nightclub with a firearm hidden in his pants, did not have a reasonable articulable suspicion of criminal activity that entitled him to make some sort of inquiry.

¶ 33    In *People v. Mitchell*, 165 Ill. 2d 211, 225 (1995), our supreme court relied on *Minnesota v. Dickerson*, 508 U.S. 366 (1993), when it recognized the acceptance of the "plain touch" doctrine and stated "the Court reasoned that if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." Here, Officer Wright effectuated a *Terry* stop after receiving a citizen complaint that

defendant was concealing a suspected weapon and defendant had an opportunity to do what a reasonably prudent person in his situation would do:  tell Officer Wright that he legally possessed the weapon because he possessed a FOID card or concealed carry license. *People v. Hood*, 2019 IL App (1st) 162194, ¶72 (under the Firearm Concealed Carry Act, a police officer is allowed to ask during an investigatory stop whether a person carrying a firearm has the requisite license. 430 ILCS 66/10(h) (West 2014)). Of course, we do not know what transpired between defendant and Officer Wright because there is an inadequate record but, based on the trial evidence, it is reasonable to infer that defendant did not produce either a concealed carry permit or a FOID card.

¶ 34    "To support an investigatory stop, officers need only reasonable suspicion—that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law." *People v. Holmes*, 2017 IL 120407, ¶ 28. Following the investigatory *Terry* stop and recovery of the weapon from defendant's pants, the police had probable cause to arrest defendant following the recovery of the gun. An officer has probable cause to arrest a suspect when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the suspect has committed a crime. *People v. Jackson*, 232 Ill. 2d 246, 275 (2009). At the time of the *Terry* stop and defendant's subsequent arrest, Officer Wright was informed by a citizen that defendant was suspected of carrying a gun, he conducted a pat down to determined that  defendant was likely in possession of a firearm, he was attempting to conceal it and he apparently did not indicate that he had the necessary credentials to carry the firearm.  These facts show that Officer Wright had reason to believe defendant had committed a weapons violation, and properly arrested defendant.

¶ 35    The majority's position in this case sends the message that citizens have the unfettered right to carry guns wherever and whenever they please without providing proof that they can legally do so. And, under the majority's view, unless the suspect is doing something other than merely possessing a firearm, an officer cannot inquire as to whether the firearm is legally possessed. This is a very slippery slope and a very dangerous message to send to gun-toting felons, especially given the proliferation of gun offenses in our great city and county. This is not the wild west where there are no laws applicable to the possession of firearms.

¶ 36    Defendant suffered no prejudice by counsel's failure to file a motion to suppress. The motion would have failed as a proper *Terry* stop turned into a proper arrest. Therefore, trial counsel was not ineffective for failing to file said motion.

¶ 37    For the foregoing reasons, I would affirm defendant's conviction.